## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| **OMEGA NAVIGATION ENTERPRISES,** | § | **Case No. 11-** |
| **INC., et al.,**[1] | § | |
| | § | **Joint Administration Requested** |
| Debtors. | § | **Chapter 11** |

**DEBTORS' EMERGENCY MOTION FOR ORDER (I) AUTHORIZING DEBTORS TO (A) PAY PREPETITION WAGES AND SALARIES TO EMPLOYEES AND (B) PAY PREPETITION BENEFITS AND TO CONTINUE BENEFIT PROGRAMS IN THE ORDINARY COURSE, AND (II) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR ALL RELATED CHECKS AND ELECTRONIC PAYMENT REQUESTS**

IF YOU WANT A HEARING, YOU MUST REQUEST ONE IN WRITING AND YOU MUST RESPOND SPECIFICALLY TO EACH PARAGRAPH OF THIS PLEADING.  YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY ONE (21) DAYS FROM THE DATE YOU WERE SERVED AND GIVE A COPY TO THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF.

IF A PARTY REQUESTS EMERGENCY CONSIDERATION, THE COURT MAY ACT EXPEDITIOUSLY ON THE MATTER.  IF THE COURT ALLOWS A SHORTER RESPONSE TIME THAN TWENTY ONE (21) DAYS, YOU MUST RESPOND WITHIN THAT TIME.  IF THE COURT SETS AN EMERGENCY HEARING BEFORE THE RESPONSE TIME WILL EXPIRE, ONLY ATTENDANCE AT THE HEARING IS NECESSARY TO PRESERVE YOUR RIGHTS.  IF AN EMERGENCY HEARING IS NOT SET, YOU MUST RESPOND BEFORE THE RESPONSE TIME EXPIRES.

THE DEBTORS HAVE REQUESTED THAT THIS MOTION BE CONSIDERED AT THE DEBTORS' FIRST DAY HEARINGS.

---

[1] The Debtors in these chapter 11 cases are Omega Navigation Enterprises, Inc.; Galveston Navigation Inc.; Beaumont Navigation Inc.; Carrolton Navigation Inc.; Decatur Navigation Inc.; Elgin Navigation Inc.; Fulton Navigation Inc.; Orange Navigation Inc.; Baytown Navigation Inc.; and Omega Navigation (USA) LLC.

Omega Navigation Enterprises, Inc. ("Omega")[2] et al., the above-captioned debtors and debtors-in-possession (together, the "Debtors"), by and through their undersigned proposed attorneys, hereby file this Emergency Motion For an Order (i) Authorizing the Debtors to (A) Pay or Prepetition Wages and Salaries to Employees and (B) Pay Prepetition Benefits and to Continue Benefit Programs in the Ordinary Course, and (ii) Directing Banks to Honor Prepetition Checks for Payment of Prepetition Employee Obligations (the "Motion") and in support thereof, respectfully represent as follows:

## I. JURISDICTION AND VENUE

1.      This Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of these chapter 11 cases in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested in this Motion are §§ 105(a), 363, 507(a)(4), 541, 1107, and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## II. BACKGROUND

**Business Description**

2.      On July 8, 2011 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11, Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court").  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are operating their businesses and managing their property as debtors-in-possession.  The Debtors have requested

---

[2] Capitalized terms used but not otherwise defined in this Motion have the meanings ascribed to such terms in the Affidavit of Gregory McGrath (the "First Day Affidavit"), Chief Financial Officer of the Debtors, filed on the Petition Date and incorporated herein by reference.

joint administration of these chapter 11 cases by motion filed concurrently herewith.  No trustees or examiners have been appointed in these cases.

3.      Omega is an international provider of marine transportation services focusing on seaborne transportation of refined petroleum products.  Omega was founded in 2005 and its corporate headquarters is in Athens, Greece.  Omega is the parent company of the Debtors, is incorporated in the Marshall Islands, and completed its initial public offering in April 2006. Omega's Class A Common Shares are traded on the NASDAQ National Market under the symbol "ONAV" and are also listed on the Singapore Exchange Securities Trading Limited under the symbol "ONAV 50."

4.      Together, the Debtors wholly own a fleet of eight high specification product tankers.  Each wholly-owned vessel is owned by a separate Debtor entity (each a "Vessel Owner"), all of which are wholly-owned by Omega.  The vessels have a combined cargo capacity of 512,358 deadweight tons (dwt).  All vessels in the Omega fleet are double hull in order to meet the International Maritime Organization regulations banning all single hull tankers by 2010 or 2015, depending on the port or flag state.  Omega's product tankers are designed to transport several different refined petroleum products simultaneously in segregated, coated cargo tanks.  These cargoes typically include gasoline, jet fuel, kerosene, naphtha, gas oil and heating oil.

5.      Omega generates revenues by employing its fleet of vessels on time charters as well as in the spot market.  For all of the wholly-owned vessels, Omega provides the commercial management in-house through the wholly-owned non-debtor subsidiary Omega Management, Inc.  This management includes obtaining employment for the vessels, negotiating charters, and managing relationships.

6.      Technical management of the vessels (e.g. managing day-to-day vessel operations, performing general vessel maintenance, ensuring regulatory and classification society compliance, oil majors vetting procedures, supervising the maintenance and general efficiency of vessels, arranging hire of qualified officers and crew, arranging and supervising drydocking and repairs, purchasing supplies, spare parts and new equipment for vessels, appointing supervisors and technical consultants and providing other technical support) is provided by the non-debtor Omega Management, Inc. for six of the vessels, and the remainder of the vessels are technically managed by a third party.  Omega is responsible for the strategic management of the fleet, including locating, obtaining financing for, purchasing and selling vessels and formulating and implementing overall business strategies.

**Description of Secured Debt**

7.      Omega is a borrower pursuant to that certain senior secured Facilities Agreement for a US$242,720,000.00 Term Loan dated April 7, 2006 (as amended, modified and supplemented), whereby HSH Nordbank AG is, among other things, appointed agent, security agent and trustee, and HSH Nordbank AG, Credit Suisse, The Governor and Company of the Bank of Scotland, and Dresdner Bank AG are lenders (the "Senior Facility").  Approximately $242.72 million is currently outstanding under the Senior Facility.  The Senior Facility is secured by, among other things, Vessel Owners' guarantees, first priority mortgages, first priority assignment of insurances in respect to the vessels, and first priority assignment of each of the vessels' earnings.

8.      Importantly, prior to initiating these bankruptcy proceedings, Omega filed two lawsuit in the Courts of the Hellenic Republic (the "Greece Litigation") against the lenders under the Senior Facility (the "Senior Lenders"), and Omega reserves its right to seek further damages or enforce the present lawsuits by the filing of additional suits.

9.      In the first suit, Omega asserts, among other things, that the Senior Lenders are in material breach of an agreement whereby they promised to extend the time for repayment of principal under the Senior Facility for three years from the original due date (i.e. extend to April 12, 2014).  The Senior Lenders have not honored their agreement and have refused to extend the repayment under the Senior Facility.  Omega also asserts, among other things, that the Senior Lenders have engaged in abusive exploitation of the relationship of financial dependence between the Debtors and the Senior Lenders and such conduct is opposite to the good faith and contractual ethics required by European standards of competition, and therefore such actions are invalid.  The claims of Omega for abusive exploitation of their dominant position are based on Article 82 of the European Convention and the related European Commission Regulation 1/2003, which are applicable in Greece, as well as pursuant to Greek Law 703/77.

10.      In the second lawsuit, Omega asserts, among other things, that Omega has been and continues to be seriously damaged by, among other things, the Senior Lenders' breach and abusive actions.  Such damages amount to approximately $570,000,000.00 (plus interest) at the time of filing the second suit, and, via the second suit, Omega seeks indemnification for such damages.

11.      Based on the Greece Litigation and the allegations therein, Omega disputes the obligations under the Senior Facility and the claims of the Senior Lenders, as well as the interests granted under the security documents related to the Senior Facility.

12.      Omega is also a borrower pursuant to that certain Junior Secured Loan Agreement for a loan of up to US$42,500,000.00 (as amended, modified and supplemented), whereby by The Bank of Tokyo-Mitsubishi UFJ, Ltd, New York Branch ("BTM") and NIBC Bank N.V. are swap banks, NIBC Bank N.V. is appointed agent, and BTM and NIBC Bank N.V. are lenders (the "Junior Credit Agreement," and together with the Senior Facility, the "Prepetition

Indebtedness"). Approximately $36.2 million is outstanding under the Junior Credit Agreement. The Junior Credit Agreement is secured by, among other things, Vessel Owners' guarantees, second priority mortgages, second priority assignment of insurances in respect to the vessels, and second priority assignment of each of the vessels' earnings.

13.     Together, the lenders under the Senior Facility and the Junior Credit Agreement are referred to herein as the "Prepetition Lenders." All collateral securing the Prepetition Indebtedness is referred to herein as the "Prepetition Collateral."

14.     Omega is also the borrower under a $5,250,000.00 secured demand convertible promissory note between Omega and One Investments, Inc. dated July 16, 2010 (the "Promissory Note"). The Promissory Note is due on demand at any time after its first anniversary. The Promissory Note is secured by a pledge of all shares of Omnicrom Holdings Ltd. and a guarantee by Omnicrom Holdings Ltd. Georgios Kassiotis is the president of One Investments, Inc. Mr. Kassiotis is also an officer of each of the Debtors and a director of each of the Debtors (except for Omega Navigation (USA) LLC, which is member managed).

## III. RELIEF REQUESTED

15.     Because of the filing of the bankruptcy petitions, the Debtors cannot pay prepetition claims, including salaries and wages incurred before the Petition Date, absent specific Court authorization.

16.     The Debtors employ twenty-seven (27) onshore employees, including officers directly through Omega and/or the non-debtor Omega Management Inc. In order to avoid the undue hardship that would undoubtedly befall the employees if they went unpaid, the Debtors request the Court to enter an order under Bankruptcy Code §§ 105(a), 363, 507(a)(4), 541, 1107, and 1108 granting the Debtors the authority, in their discretion and in the exercise of their business judgment, (a) to pay all obligations of the Debtors owing to or on behalf of employees

(the "Employee Claims"),[3] including prepetition claims, whether accrued or currently due and payable, of all of the Debtors' employees, and (b) directing all financial institutions to honor prepetition checks for payment of Employee Claims and prohibiting such financial institutions from placing any holds on, or attempting to reverse, any automatic transfers made on Employee Claims.

17.     Assuming they are granted authority to use cash collateral,[4] the Debtors will have sufficient funds available to pay all requested amounts as and when due, and all payments made on account of Employee Claims will be made in accordance with any budgeted use of the cash collateral approved by the Court.

**The Proposed Payments Should be Authorized Under Bankruptcy Code Section 507**

18.     The Debtors pay their employees once a month at the end of each month.  As of the end June, the Debtors were timely on all payments to non-executive employees.  Given the Petition Date, the Debtors anticipate that they will only owe non-executive employees prepetition sums for the first days of July.  The total amount to be paid to all employees is approximately $85,097.20.[5]  None of the amounts owed for any Employee Claim exceeds the Bankruptcy Code § 507(a) caps.[6]  Thus, granting the relief requested is consistent with the Bankruptcy Code's purpose of ensuring that employees are paid in full up to the statutorily imposed limit due to the priority status of their claims.

---

[3] The Debtors also seek authority to pay all federal, state, local, and foreign income withholding, payroll, employment, unemployment, social security, and similar taxes, whether withheld from employees' wages or paid directly by the Debtors to governmental authorities, as well as other Employee withholdings, including, but not limited to, charitable contributions and garnishment contributions, if any. The defined term "Employee Claims" is meant to include all such payments.

[4] The Debtors have filed a motion for authority to use cash collateral contemporaneously with the filing of this Motion.

[5] Total amount due to onshore employees plus seamen paid directly by the company, totaling 101 employees.

[6] Pursuant to Bankruptcy Code section 507(a)(4)(A), employee claims for "wage, salaries, or commissions, including vacation, severance, and sick leave pay" earned within 180 days before the Petition Date are afforded priority unsecured status to the extent of $11,725 per employee. 11 U.S.C. § 507(a)(4)(A).

**The Proposed Payments Are Appropriate Under Bankruptcy Code Section 363**

19.     Under Bankruptcy Code section 363, a bankruptcy court is empowered to authorize a chapter 11 debtor to expend funds in the bankruptcy court's discretion outside the ordinary course of business.  *See* 11 U.S.C. § 363.  In order to obtain approval for the use of estate assets outside the ordinary course of business, the debtor must articulate a valid business justification for the requested use.  *See Institutional Creditors of Cont'l Airlines, Inc. v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) (holding that section 363(b) requires that "there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business"); *United States Trustee v. Bethlehem Steel Corp. (In re Bethlehem Steel Corp.)*, No. 02 Civ. 2954 (MBM), 2003 WL 21738964, at *12 (S.D.N.Y. July 28, 2003) ("To approve a transaction under § 3639b), the bankruptcy court must find that there is a good business reason to allow the transaction"); *In re Terrace Gardens Park P'ship*, 96 B.R. 707, 714 (Bank. W.D. Tex. 1989) (applying *Continental* to require "articulated business justification" for section 363 transaction).

20.     The payment of the Employee Claims, as set forth herein, serves the sound business purpose of maximizing the value to the Debtors' estates.  The Debtors' success in these cases hinges in large part on the morale and continued efforts of the employees.  Through the payment of the Employee Claims, the Debtors seek to motivate and encourage the employees to continue to support the Debtors' restructuring efforts.  Accordingly, the Court should grant the requested relief under Bankruptcy Code section 363.

**The Debtors Should Be Authorized to Pay the Employee Claims Under Bankruptcy Code Section 1107(a) and 1108**

21.     The Debtors, operating their businesses as debtors-in-possession under Bankruptcy Code section 1107(a) and 1108, are judiciaries "holding the bankruptcy estate[s] and operating the business[es] or the benefit of [their] creditors and (if the value justifies) equity

owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  Implicit in the duties of a chapter 11 debtor-in-possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." *Id.*

22.    Courts have noted that there are instances in which a debtor-in-possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.*; *see also in re Mirant Cop.*, 296 B.R. 427, 429-30 (Bankr. N.D. Tex. 2003) (allowing debtors to continue their respective businesses).  The *CoServ* court specially noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate."  *Id.*  The Court provided a there-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant.  Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

> *Id*. at 498.

23.    Payment of the Employee Claims meets each element of the *CoServ* court's standard.  The employees likely maintain priority claims against the Debtors for their Employee Claims.  In addition, any failure by the Debtors to pay the Employee Claims would negatively impact the morale of the Debtors' employees at a critical time for the Debtors and their businesses.  In short, the potential harm and economic disadvantage that would stem from the failure to pay the Employee Claims is grossly disproportionate to the amount of any prepetition claim that may be paid.  Finally, with respect to the employees the Debtors have examined options other than payment of the Employee Claims and have determined that to avoid significant disruption of the Debtors' business operations there exists no practical or legal

alternative to payment of such obligations.  Therefore, the Debtors can only meet their fiduciary duties as debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108 by payment of the Employee Claims.

**Payment of the Employee Claims Should be Authorized Under Bankruptcy Code Section 105 and the Doctrine of Necessity**

24.     Payment of the Employee Claims is necessary for the Debtors' effective reorganization.  The Debtors believe that it is critical for employee productivity and stability that all Employee Claims and payments remain current and be continued postpetition. If the Employees' wages are not received in the ordinary course of business, employee morale will deteriorate, which, in turn, will substantially and adversely impact the Debtors' ability to complete a successful reorganization.  Further, if the Employee Claims are not paid in the ordinary course of business, the Employees will suffer personal hardship and in some cases will be unable to pay basic living expenses.  This will hurt the Employees, destabilize the Debtors, and harm the Debtors' businesses and reorganization efforts.  Any loss of Employees would disrupt the Debtors' businesses and would deplete the value of these estates.  Accordingly, the Debtors seek authorization to pay all Employee Claims in the ordinary course of business.

25.     Section 105(a) of the Bankruptcy Code provides: "The court may issue an order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  The Fifth Circuit has narrowly interpreted this authority as restricting the use of section 105 powers to matters which do not contradict other provisions of the Bankruptcy Code. *See In re Oxford Mgmt., Inc.*, 4 F.3d 1329 (5th Cir. 1993).  Although the Fifth Circuit same "perilously close" to prohibiting all postpetition, pre-confirmation payments of prepetition claims, *see In re CoServ, LLC*, 273 B.R. 487 (N.D. Tex. 2002), subsequent decisions have suggested that section 363, 1107 and even 362 in concert with section 105 and the "doctrine of necessity" support an authorization to pay prepetition claims in certain circumstances. *See In re*

*CEI Roofing, Inc.*, 315 B.R. 50 (Bankr. N.D. Tex. 2004). In a lengthy analysis of the subject,

Judge Hale of the Bankruptcy Court for the Northern District of Texas succinctly summarized

the law apparent in the Fifth Circuit on employee wage claims as follows:

> "There has evolved a rule for the payment of prepetition wages and benefits
> which is based on both common sense and the express provisions of the
> Bankruptcy Code. If employees are not paid, they will leave. If they leave the
> Debtors' business, the bankruptcy case fails shortly after filing. No one will
> benefit from the process. The Code gives employees a statutory priority that
> elevate the claims above the general unsecured claims, and, in fact, most claims in
> the bankruptcy case. To the extent that the existing holders of claims of higher
> priority than wage claims consent or do not timely object, such priority claim may
> be made during the pendency of the bankruptcy case. The treatment and payment
> of such claims before confirmation does no violence to the Code or existing case
> law in this circuit. In fact, such orders are usually 'necessary ' and 'appropriate' to
> implement a debtor's reorganization under Chapter 11." *In re CEI Roofing, Inc.*,
> 315 B.R. at 61.

      26.     This Court has the discretion to authorize payment of prepetition obligations such

as prepetition wages. *See, e.g., In re Equalnet Commc'ns Corp.*, 258 B.R. 368, 370 (Bankr. S.D.

Tex. 2000) (noting that "certain claims . . . enjoy a priority status in addition to being sometimes

critical to the ongoing nature of the business – such as employee wage claims," and holding that

a claim held by a crucial contract employee qualifies as such a claim). Other courts have

authorized debtors to pay prepetition wages, salary expenses, and benefits claims in excess of the

Bankruptcy Code § 507(a) caps on the grounds that payment of such claims was necessary to

effect a successful reorganization. *See In re Leigh & New England Ry. Co.*, 657 F.2d 570, 581

(3d Cir. 1981) ("The 'necessity of payment' doctrine permits immediate payment of claims of

creditors where those creditors will not supply services or materials essential to the conduct of

the business until their pre-reorganization claims have been paid."); *In re Penn Central Trans.*

*Co.*, 467 F.2d 100, 102 (3d Cir. 1973); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr.

S.D.N.Y. 1989) ("This rule recognized the existence of judicial power to authorize a debtor in a

reorganization case to pay pre-petition claims where such payment is essential to the continued

operation of the debtor."); *In re Chateaugay Corp.*, 80 B.R. 279 (S.D.N.Y. 1987) (under "necessity of payment" doctrine, it is appropriate for bankruptcy court to defer to debtor's business judgment in permitting payment of certain workers' compensation claims); *In re Braniff, Inc.*, 218 B.R. 628, 633 (Bankr. N.D. Fla. 1998) (noting that debtor may pay pre-petition wages when necessary to ensure employees remain on the job postpetition); *In re Gulf Air, Inc.*, 112 B.R. 152, 153 (Bankr. W.D. La. 1989) (authorizing debtor-in-possession to pay pre-petition employee wages and benefits, and health, life and workers' compensation premiums).[7]

27.     Many bankruptcy courts within this district have granted similar relief.  *See, e.g., In re Seahawk Drilling, Inc.*, Case No. 11-20089, Docket No. 47 (Bankr. S.D. Tex. Feb. 15, 2011); *In re Bay City Hospitality, Ltd.*, Case No. 10-41001, Docket No. 17 (Bankr. S.D. Tex. Dec. 8, 2010); *In re Probe Res. US Ltd.*, Case No. 10-40395, Docket No. 66 (Bankr. S.D. Tex. Dec. 3, 2010); *In re Lack's Stores, Inc.*, Case No. 10-60149, Docket Nos. 36 and 147 (Bankr. S.D. Tex. Nov. 18, 2010 and Dec. 8, 2010); *In re ISC Bldg. Materials, Inc.*, Case No. 10-35732, Docket No. 34 (Bankr. S.D. Tex. July 9, 2010); *In re Corpus Christi Hardware, LLC*, Case No. 10-20213, Docket No. 24 (Bankr. S.D. Tex. Mar. 3, 2010); *In re USA Dry Van Logistics, LLC*, Case No. 10-20102, Docket No. 19 (Bankr. S.D. Tex. Feb. 3, 2010); *In re Harborwalk, LP*, Case No. 10-80043, Docket No. 31 (Bankr. S.D. Tex. Jan. 29, 2010); *In re Deep Marine Holdings, Inc.*, Case No. 09-39313, Docket No. 52 (Bankr. S.D. Tex. Dec. 18, 2009); *In re Edge Petroleum Corp.*, Case No. 09-20644, Docket No. 47 (Bankr. S.D. Tex. Oct. 5, 2009); *In re Express Energy*

---

[7] Although the "necessity of payment" doctrine has been widely accepted, the Court in *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) developed an alternative test to determine whether payment of certain prepetition unsecured claims prior to confirmation of a plan of reorganization would be appropriate.  Under the *CoServ* test, a debtor must show that (i) it is critical that the debtor deal with the claimant; (ii) unless the debtor deals with the claimant, the debtor risks the probability of harm, or alternatively, loss of economic advantage to the estate of the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim; and (iii) there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim. *Id.*  Although the *CoServ* analysis appears to be applicable only to the treatment of prepetition vendor claims, the payment of the Employee Claims would satisfy the *CoServ* test.

*Servs. Operating, LP*, Docket Nos. 28 and 116, Case. No. 09-38044 (Bankr. S.D. Tex. Oct. 28, 2009 and Nov. 17, 2009); *In re Bigler LP*, Case No. 09-38188, Docket No. 34 (Bankr. S.D. Tex. Nov. 11, 2009).

**Payment of Trust Fund Taxes**

28.     The Debtors are required by Greek law to withhold from an Employee's wages amounts related to applicable income taxes and social security taxes (the "Trust Fund Taxes"). The failure to make such payments may subject the Debtors and their officers to liability under Greek law.  Accordingly, the Debtors seek authorization to collect and pay all taxes attributable to prepetition wages as required by Greek law, in the ordinary course of business.

29.     Payment of the Trust Fund Taxes will not prejudice the Debtors' estates because such withholdings are held in trust for the benefit of the related payees and thus do not constitute property of the Debtors' estates under Bankruptcy Code section 541(b)(7). *See, e.g., Beiger v. IRS*, 496 U.S. 53 (1990) (concluding that withholding taxes are property held by a debtor in trust for another and, as such, are not property of the debtor's estate).  Accordingly, the Debtors believe that they have authority to direct such funds to the appropriate parties in the ordinary course of business.

30.     Accordingly, for all the foregoing reasons, the Debtors submit that cause exists for granting the relief requested herein.

**Request for Immediate Relief**

31.     Pursuant to the recently revised Bankruptcy Rule 6003, the court may grant relief regarding a motion to pay all or part of a prepetition claim that arose before the Petition Date within twenty-one (21) days after the filing of the petition if the relief is necessary to avoid immediate and irreparable harm.  As described above, the employees are vital to the Debtors' business operations.  Satisfaction of the Employee Claims is essential to ensure that the Debtors

can continue to meet delivery schedules to bring money into the estate.  Failure to satisfy the Employee Claims in the ordinary course of business during the first twenty-one (21) days of these cases will jeopardize the Debtors' business operations at this critical time in an already challenging market.  Accordingly, the Debtors submit that they have satisfied the requirements of Bankruptcy Rule 6003 to support immediate payment of prepetition obligations related to the Employee Claims.

**<u>Honoring Prepetition Checks and Electronic Transfers</u>**

32.     The Debtors further seek entry of an order authorizing and directing all applicable banks and other financial institutions to receive, process, honor and pay any and all checks drawn on electronic funds transferred to pay Employee Claims, whether such checks were presented prior to or after the Petition Date; provided, however, that such checks or electronic transfers are identified by the Debtor as relating to the authorized payment of Employee Claims. The Debtors also seek authority to issue new postpetition checks, or effect new electronic fund transfers, on account of such claims to replace any prepetition checks or electronic fund transfer requests that may be dishonored or rejected as a result of the commencement of the Debtors' chapter 11 cases.

33.     The Debtors represent that they have sufficient availability of funds to pay the amounts described herein in the ordinary course of business by virtue of cash reserves and expected cash flows from ongoing business operations.  Also, under the Debtors' existing cash management system, the Debtors represent that checks or wire transfer requests can be readily identified as relating to an authorized payment made to an employee.  Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently and that all applicable financial institutions should be

authorized, when requested by the Debtors, to receive, process, honor and pay any and all checks or wire transfer requests in respect of the Employee Claims.

## IV.  DEBTORS' RESERVATION OF RIGHTS

34.     Nothing contained herein is or should be construed as: (a) an admission as to the validity of any claim against the Debtor; (b) a waiver of the Debtors' right to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an assumption or rejection of any executory contract or unexpired lease pursuant to Bankruptcy Code section 365; or (e) otherwise affect the Debtor's rights under Bankruptcy Code section 365 to assume or reject any executory contract with any party subject to this Order.  If this Court grants the relief sought herein, any payments made pursuant to the Court's order is not intended and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently

## V.  NOTICE

35.     Notice of this Motion has been or will be provided (a) the Office of the United States Trustee for the Southern District of Texas, (b) all known or alleged secured creditors, (c) the 30 largest unsecured non-insider creditors of the Debtors (on a consolidated basis), (d) all known shareholders holding over 5% of a class of equity interests of Omega Navigation Enterprises, Inc., (e) all Debtor professionals, (f) all members of any official committee of unsecured creditors that may be appointed, (g) counsel for, and any professionals retained by, any official committee of unsecured creditors that may be appointed, (h) the United States Attorney's Office for the Southern District of Texas, (i) the Internal Revenue Service, (j) any persons who have filed a request for notice pursuant to Bankruptcy Rule 2002, and (k) any such other government agencies to the extent required by the Bankruptcy Rules and Local Rules.  The Debtors submit that no further notice of this Motion is required.

WHEREFORE, premises considered, the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as the Court deems just and proper.

Respectfully submitted,


**BRACEWELL & GIULIANI LLP**

By: ___/s/ William A. (Trey) Wood III_____
      William A. (Trey) Wood III
      Texas Bar No. 21916050
      Trey.Wood@bgllp.com
      Jason G. Cohen
      Texas Bar No. 24050435
      Jason.Cohen@bgllp.com
      711 Louisiana, Suite 2300
      Houston, Texas 77002
      Telephone: (713) 223-2300
      Facsimile: (713) 221-1212

      -and-

      Evan Flaschen
      Conn. Bar No. 304232
      Evan.Flaschen@bgllp.com
      Ilia M. O'Hearn
      Conn. Bar No. 423613
      Ilia.OHearn@bgllp.com
      Goodwin Square
      225 Asylum Street, Suite 2600
      Hartford, CT 06103
      Telephone: (860) 947-9000
      Facsimile: (860) 246-3201

**PROPOSED COUNSEL FOR THE DEBTORS
AND DEBTORS-IN-POSSESSION**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on July 8, 2011, a true and correct copy of this document was served on all parties on the attached master service list by electronic means as listed on the court's ECF noticing system, by electronic mail as indicated, and by United States first class mail, postage prepaid.

*/s/ Jason G. Cohen*
Jason G. Cohen