IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **In Re:** § | | |
| § | | |
| **OMEGA NAVIGATION ENTERPRISES,** § | **Case No. [11-      ]** | |
| **INC., et al.,**[1] § | | |
| § | **Joint Administration Requested** | |
| **Debtors.** § | **Chapter 11** | |

**DEBTORS' EMERGENCY MOTION FOR ORDER AUTHORIZING MAINTENANCE
OF INSURANCE POLICIES AND PAYMENT OF INSURANCE PREMIUMS**

**IF YOU WANT A HEARING, YOU MUST REQUEST ONE IN WRITING AND YOU MUST RESPOND SPECIFICALLY TO EACH PARAGRAPH OF THIS PLEADING. YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY ONE (21) DAYS FROM THE DATE YOU WERE SERVED AND GIVE A COPY TO THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF.**

**IF A PARTY REQUESTS EMERGENCY CONSIDERATION, THE COURT MAY ACT EXPEDITIOUSLY ON THE MATTER. IF THE COURT ALLOWS A SHORTER RESPONSE TIME THAN TWENTY ONE (21) DAYS, YOU MUST RESPOND WITHIN THAT TIME. IF THE COURT SETS AN EMERGENCY HEARING BEFORE THE RESPONSE TIME WILL EXPIRE, ONLY ATTENDANCE AT THE HEARING IS NECESSARY TO PRESERVE YOUR RIGHTS. IF AN EMERGENCY HEARING IS NOT SET, YOU MUST RESPOND BEFORE THE RESPONSE TIME EXPIRES.**

**THE DEBTORS HAVE REQUESTED THAT THIS MOTION BE CONSIDERED AT THE DEBTORS' FIRST DAY HEARINGS.**

---

[1] The Debtors in these chapter 11 cases are Omega Navigation Enterprises, Inc.; Galveston Navigation Inc.; Beaumont Navigation Inc.; Carrolton Navigation Inc.; Decatur Navigation Inc.; Elgin Navigation Inc.; Fulton Navigation Inc.; Orange Navigation Inc.; Baytown Navigation Inc.; and Omega Navigation (USA) LLC.

Omega Navigation Enterprises, Inc. ("Omega")[2] et al., the above-captioned debtors and debtors-in-possession (together, the "Debtors"), by and through their undersigned proposed attorneys, hereby file this emergency motion for entry of an order authorizing maintenance of insurance policies and payment of insurance premiums and related obligations (the "Motion") and in support thereof, the Debtors respectfully represent as follows:

## I.  JURISDICTION AND VENUE

1. This Court has jurisdiction over these cases and this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157.  Venue of these chapter 11 cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested in this Motion are §§ 105(a), 363, 364 and 503(b)(1) of title 11 of the United States Code (the "Bankruptcy Code").

## II.  BACKGROUND

**Business Description**

2. On July 8, 2011 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11, Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court").  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are operating their businesses and managing their property as debtors-in-possession.  The Debtors have requested joint administration of these chapter 11 cases by motion filed concurrently herewith.  No trustees or examiners have been appointed in these cases.

---

[2] Capitalized terms used but not otherwise defined in this Motion have the meanings ascribed to such terms in the Affidavit of Gregory McGrath (the "First Day Affidavit"), Chief Financial Officer of Omega Navigation Enterprises, Inc., filed on the Petition Date and incorporated herein by reference.

3. Omega is an international provider of marine transportation services focusing on seaborne transportation of refined petroleum products. Omega was founded in 2005 and its corporate headquarters is in Athens, Greece. Omega is the parent company of the Debtors, is incorporated in the Marshall Islands, and completed its initial public offering in April 2006. Omega's Class A Common Shares are traded on the NASDAQ National Market under the symbol "ONAV" and are also listed on the Singapore Exchange Securities Trading Limited under the symbol "ONAV 50."

4. Together, the Debtors wholly own a fleet of eight high specification product tankers. Each wholly-owned vessel is owned by a separate Debtor entity (each a "<u>Vessel Owner</u>"), all of which are wholly-owned by Omega. The vessels have a combined cargo capacity of 512,358 deadweight tons (dwt). All vessels in the Omega fleet are double hull in order to meet the International Maritime Organization regulations banning all single hull tankers by 2010 or 2015, depending on the port or flag state. Omega's product tankers are designed to transport several different refined petroleum products simultaneously in segregated, coated cargo tanks. These cargoes typically include gasoline, jet fuel, kerosene, naphtha, gas oil and heating oil.

5. Omega generates revenues by employing its fleet of vessels on time charters as well as in the spot market. For all of the wholly-owned vessels, Omega provides the commercial management in-house through the wholly-owned non-debtor subsidiary Omega Management, Inc. This management includes obtaining employment for the vessels, negotiating charters, and managing relationships.

6. Technical management of the vessels (e.g. managing day-to-day vessel operations, performing general vessel maintenance, ensuring regulatory and classification society

compliance, oil majors vetting procedures, supervising the maintenance and general efficiency of vessels, arranging hire of qualified officers and crew, arranging and supervising drydocking and repairs, purchasing supplies, spare parts and new equipment for vessels, appointing supervisors and technical consultants and providing other technical support) is provided by the non-debtor Omega Management, Inc. for six of the vessels, and the remainder of the vessels are technically managed by a third party.  Omega is responsible for the strategic management of the fleet, including locating, obtaining financing for, purchasing and selling vessels and formulating and implementing overall business strategies.

**Description of Secured Debt**

7. Omega is a borrower pursuant to that certain senior secured Facilities Agreement for a US$242,720,000.00 Term Loan dated April 7, 2006 (as amended, modified and supplemented), whereby HSH Nordbank AG is, among other things, appointed agent, security agent and trustee, and HSH Nordbank AG, Credit Suisse, The Governor and Company of the Bank of Scotland, and Dresdner Bank AG are lenders (the "Senior Facility").  Approximately $242.72 million is currently outstanding under the Senior Facility.  The Senior Facility is secured by, among other things, Vessel Owners' guarantees, first priority mortgages, first priority assignment of insurances in respect to the vessels, and first priority assignment of each of the vessels' earnings.

8. Importantly, prior to initiating these bankruptcy proceedings, Omega filed two lawsuits in the Courts of the Hellenic Republic (the "Greece Litigation") against the lenders under the Senior Facility (the "Senior Lenders"), and Omega reserves its right to seek further damages or enforce the present lawsuits by the filing of additional suits.

9. In the first suit, Omega asserts, among other things, that the Senior Lenders are in material breach of an agreement whereby they promised to extend the time for repayment of principal under the Senior Facility for three years from the original due date (i.e. extend to April 12, 2014). The Senior Lenders have not honored their agreement and have refused to extend the repayment under the Senior Facility. Omega also asserts, among other things, that the Senior Lenders have engaged in abusive exploitation of the relationship of financial dependence between the Debtors and the Senior Lenders and such conduct is opposite to the good faith and contractual ethics required by European standards of competition, and therefore such actions are invalid. The claims of Omega for abusive exploitation of their dominant position are based on Article 82 of the European Convention and the related European Commission Regulation 1/2003, which are applicable in Greece, as well as pursuant to Greek Law 703/77.

10. In the second lawsuit, Omega asserts, among other things, that Omega has been and continues to be seriously damaged by, among other things, the Senior Lenders' breach and abusive actions. Such damages amount to approximately $570,000,000.00 (plus interest) at the time of filing the second suit, and, via the second suit, Omega seeks indemnification for such damages.

11. Based on the Greece Litigation and the allegations therein, Omega disputes the obligations under the Senior Facility and the claims of the Senior Lenders, as well as the interests granted under the security documents related to the Senior Facility.

12. Omega is also a borrower pursuant to that certain Junior Secured Loan Agreement for a loan of up to US$42,500,000.00 (as amended, modified and supplemented), whereby by The Bank of Tokyo-Mitsubishi UFJ, Ltd, New York Branch ("BTM") and NIBC Bank N.V. are swap banks, NIBC Bank N.V. is appointed agent, and BTM and NIBC Bank N.V. are lenders

(the "Junior Credit Agreement," and together with the Senior Facility, the "Prepetition Indebtedness"). Approximately $36.2 million is outstanding under the Junior Credit Agreement. The Junior Credit Agreement is secured by, among other things, Vessel Owners' guarantees, second priority mortgages, second priority assignment of insurances in respect to the vessels, and second priority assignment of each of the vessels' earnings.

13. Together, the lenders under the Senior Facility and the Junior Credit Agreement are referred to herein as the "Prepetition Lenders." All collateral securing the Prepetition Indebtedness is referred to herein as the "Prepetition Collateral."

14. Omega is also the borrower under a $5,250,000.00 secured demand convertible promissory note between Omega and One Investments, Inc. dated July 16, 2010 (the "Promissory Note"). The Promissory Note is due on demand at any time after its first anniversary. The Promissory Note is secured by a pledge of all shares of Omnicrom Holdings Ltd. and a guarantee by Omnicrom Holdings Ltd. Georgios Kassiotis is the president of One Investments, Inc. Mr. Kassiotis is also an officer of each of the Debtors and a director of each of the Debtors (except for Omega Navigation (USA) LLC, which is member managed).

## III. RELIEF REQUESTED

15. In connection with the operation of their business, the Debtors maintain various insurance policies (the "Insurance Programs") through several different insurance carriers (the "Insurance Carriers"). Attached hereto, as **Exhibit A,** is a summary of the Insurance Programs maintained by the Debtors in connection with their ownership and operations of their fleet. The summary includes Insurance Carriers, coverage limits, policy terms and premium information.

16. The Debtors carry insurance to protect them against most of the accident-related risks involved in the conduct of their business. The operation of any vessel includes risks such

as mechanical failure, collision, property loss, cargo loss or damage, and business interruption due to political circumstances in foreign countries, hostilities and labor strikes.  Additionally, there is an inherent possibility of marine disaster, including oil spills and other environmental mishaps, and the liabilities arising from owning and operating vessels in international trade.  To safeguard against these risks, the Debtors' Insurance Programs include coverage for (i) protection and indemnity; (ii) freight, demurrage and defense; (iii) marine hull, machinery, gear and equipment; (iv) war risks; and (v) loss of hire (for certain vessels only, as explained below).

17. The protection and indemnity policies generally provide insurance against loss, damage, liability or expense, including liabilities in respect of oil pollution and wreck removal, injury or death of crew, passengers and other third parties, and the loss or damage to cargo, incurred by the insured with respect to the insured's interest in a vessel and in connection with the operation of the owned vessel during the effective terms of the policies.  The Debtors also have insurance policies in place to protect against risks involving freight, demurrage, and defending against claims brought with respect to an owned vessel.

18. The Debtors' "hull and machinery" policies provide coverage against damages or total loss of the vessel caused, among other things, by perils of the sea, fire, explosion, and liabilities resulting from a collision.  The Debtors also have insurance policies in place to protect the Vessel Owners against the difference between the vessel's market value and its insured value.  These "increased value" policies are ancillary to the "hull and machinery" policies.

19. The "war risks" policies protect the Debtors against losses to the vessels caused by acts of war, revolution or rebellion, labor disturbances, terrorists and piracy.  Additionally, certain Vessel Owners (Beamont Navigation Inc., Galveston Navigation Inc., Carrolton Navigation Inc., Fulton Navigation Inc., and Orange Navigation Inc.) carry insurance to protect

them against loss of hire of their vessels, which policy covers business interruptions that result in the loss of use of a vessel.

20.     The hull and machinery policy and the increased value policy, each insures the entire fleet.  The loss of hire policy insures the five vessels corresponding to the Vessel Owners which carry such policy.  With respect to protection and indemnity; freight, demurrage and defense; and war risks, each Vessel Owner has its own certificate of entry under the respective Insurance Programs maintained by the Debtors, which evidences the terms and conditions and coverage of the insured vessel.  All of these policies also cover Omega Navigation Enterprises, Inc., as the parent-holding company of the Omega group.

21.     The Debtors are required to pay premiums based upon a fixed rate established and billed by each Insurance Carrier.  The premiums for these policies are generally determined annually, semi-annually or quarterly; and are paid either directly to the Insurance Carrier, or through a broker (who pays the Insurance Carrier).  As of the Petition Date, the Debtors owed approximately $460,000 in premiums for these policies.  The Insurance Programs are essential to the preservation of the Debtors' business, property and assets and, in certain instances, such coverage is required by various regulations, laws, loan agreements and the contracts that govern the Debtors' maritime and commercial activity.

22.     Lastly, the Debtors maintain Directors & Officers Insurance (the "D&O Insurance") to indemnify their directors and officers from claims brought against such individuals in their capacities as executives for the Debtors.  The Debtors carry two D&O Insurance policies: (1) XL Insurance, which has a coverage limit of $15 million and an annual premium of approximately $190,000; and (2) Beazley, which has a coverage limit of 5 million and an annual premium of approximately $140,000.  Both D&O Insurance policies cover the

period from April 7, 2011 to April 7, 2012.  The Debtors financed the premiums for both policies under a financing agreement with AON Premium Finance LLC.  Payment terms under the financing agreement consist of a cash payment of $99,347.81 and eight equal monthly installments of $29,524.26, which become due monthly starting on June 7, 2011.  As of the Petition Date, the Debtors owe $29,524.26 for the July premium due July 7, 2011.

23. In accordance with the above and pursuant to §§ 105(a), 363(b) and 503(b) of the Bankruptcy Code, the Debtors seek authorization to (i) maintain and continue to make payments with respect to the Insurance Programs, including the D&O Insurance policies, on an uninterrupted basis, and (ii) pay all prepetition premiums, deductibles, and other amounts due under the Insurance Programs and the D&O Insurance policies, including any applicable retrospective adjustments.  The Debtors also propose to continue making all postpetition payments in connection with the Insurance Programs and the D&O Insurance policies.  The Debtors propose to pay all obligations arising under, or related to, these programs and policies subsequent to the Petition Date in the ordinary course of business, not on an accelerated basis, and in accordance with the terms of these programs and policies.  To the extent a premium or deductible reimbursement relating to a period prior to the Petition Date is outstanding with respect to any insurance policy, the Debtors seek authority to make such payment in the same manner that such payments were made prior to the Petition Date.

24. The Debtors further request that the Court authorize and direct those banks at which the Debtors maintain accounts to receive, process, honor and pay any and all checks drawn or electronic funds transferred to pay any obligations arising under the Insurance Programs, including the D&O Insurance policies, (the "Insurance Obligations"), whether such checks were presented prior to or after the Petition Date; *provided, however*, that such checks or

electronic transfers are identified by the Debtors as relating directly to the authorized payment of the Insurance Obligations. The Debtors also seek authority to issue new postpetition checks, or effect new electronic fund transfers, on account of the Insurance Obligations to replace any prepetition checks or electronic fund transfer requests that may be dishonored or rejected as a result of the commencement of the Debtors' chapter 11 cases.

25.     For the reasons set forth below, the Debtors submit that cause exists to grant the relief requested herein.

### IV.  ARGUMENT AND AUTHORITY

26.     Pursuant to § 503(b)(1) of the Bankruptcy Code, a debtor may incur, and the court, after notice and a hearing, shall allow as administrative expenses, among other things, "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1). In addition, pursuant to § 363(b) of the Bankruptcy Code, a debtor may, in the exercise of its sound business judgment and after notice and a hearing, use property of the estate outside of the ordinary course of business. *See* 11 U.S.C. § 363(b). Section 105(a) of the Bankruptcy Code further provides that the court may issue any order that is "necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

27.     The Debtors believe that most of their obligations under the Insurance Programs and the D&O Insurance policies will constitute postpetition obligations of the Debtors' estates. With respect to those Insurance Obligations that are prepetition claims, however, payment of such obligations is necessary and appropriate, and may be authorized under §§ 363(b) and 105(a) of the Bankruptcy Code pursuant to the "doctrine of necessity."

28.     The "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical

prepetition claims not explicitly authorized by the Bankruptcy Code; and it further supports the relief requested in this Motion.  *See, e.g., In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (finding that a court may authorize payment of prepetition claims if, among other things, dealing with the claimant is virtually indispensable to the preservation of the estate); *see also In re Lehigh & New England Ry. Co*., 657 F.2d 570, 581 (3d Cir. 1981) (stating that a court may authorize payment of prepetition claims if such payment "is essential to the continued operation" of the debtor); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989) (recognizing the judicial power to "authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor"); *In re Just for Feet, Inc.*, 242 B.R. 821, 825-26 (D. Del. 1999) (authorizing payment of prepetition claims of certain trade vendors indispensable to the debtors' ability to continue operating; and noting that the Supreme Court recognizes the bankruptcy court's power "to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11"). The rationale for the "doctrine of necessity" is consistent with the paramount goal of chapter 11 – "facilitating the continued operation and rehabilitation of the debtor."  *Ionosphere Clubs*, 98 B.R. at 176.  Accordingly, pursuant to §§ 105(a) and 363(b) of the Bankruptcy Code, this Court is empowered to grant the relief requested in this Motion.

29. The Debtors must continue their Insurance Programs (including the D&O Insurance policies), which provide a comprehensive range of coverage for the Debtors and their business and properties, in full force and effect.  If these policies were allowed to lapse, the Debtors would be exposed to substantial liability for any damages resulting to persons and property of the Debtors and others.  For instance, absent adequate insurance coverage, damages from a catastrophic oil spill could have a material adverse effect on the Debtors' business and

financial condition. Furthermore, maintenance of the directors' and officers' liability policy is necessary to the retention of the Debtors' senior management, who are critical to the success of the Debtors' business and reorganization, and to enable the Debtors to financially indemnify their officers and directors per the requirements set forth in their corporate bylaws.

30. Moreover, the guidelines of the Office of the United States Trustee require the Debtors to maintain their Insurance Programs. This District has granted similar requests for relief in other chapter 11 cases. *See, e.g., In re Seahawk Drilling, Inc.*, Case No. 11-20089, Dk. No. 45 (Bankr. S.D. Tex. Feb. 14, 2011); *In re Express Energy Servs. Operating, LP*, Case No. 09-38044, Dk. No. 119 (Bankr. S.D. Tex. Nov. 17, 2009); *In re Bigler LP*, Case No. 09-38188, Dk. No. 35 (Bankr. S.D. Tex. Nov. 5, 2009); *In re Edge Petroleum Corp.*, Case No. 09-20644, Dk. No. 108 (Bankr. S.D. Tex. Oct. 14, 2009).

31. The Debtors estimate that the total amount proposed to be paid with respect to prepetition amounts owed under the Insurance Programs is *de minimis* compared with the size of the Debtors' estates, the importance of employees to the reorganization effort and the potential liability exposure of the Debtors absent insurance coverage. It would be substantially more costly and disruptive to the Debtors' estate and operations if the Debtors were required to cancel their current policies and attempt to obtain new insurance policies. Based upon the foregoing, the relief requested herein is amply justified.

## V. RESERVATION OF RIGHTS

32. Nothing contained herein is intended or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any party in interests' rights to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under Bankruptcy Code section 365. Likewise, if this Court

grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently. Finally, the relief requested herein shall not oblige the Debtors to accept any services, to accept the shipment of goods, or prevent the Debtors from returning or rejecting any goods.

## VI.  NOTICE

33. Notice of this Motion has been or will be provided to (a) the Office of the United States Trustee for the Southern District of Texas, (b) all known or alleged secured creditors, (c) the 30 largest unsecured non-insider creditors of the Debtors (on a consolidated basis), (d) all known shareholders holding over 5% of a class of equity interests of Omega Navigation Enterprises, Inc., (e) all Debtor professionals, (f) all members of any official committee of unsecured creditors that may be appointed, (g) counsel for, and any professionals retained by, any official committee of unsecured creditors that may be appointed, (h) the United States Attorney's Office for the Southern District of Texas, (i) the Internal Revenue Service, (j) any persons who have filed a request for notice pursuant to Bankruptcy Rule 2002, and (k) any such other government agencies to the extent required by the Bankruptcy Rules and Local Rules. The Debtors submit that no further notice of this Motion is required.

WHEREFORE, premises considered, the Debtors respectfully request that the Court grant the relief requested herein and enter an order substantially in the form attached hereto, and grant the Debtors such other and further relief as the Court deems just.

Respectfully submitted,

**BRACEWELL & GIULIANI LLP**

By: _/s/ William A. (Trey) Wood III_
William A. (Trey) Wood III
Texas Bar No. 21916050
Trey.Wood@bgllp.com
Jason G. Cohen
Texas Bar No. 24050435
Jason.Cohen@bgllp.com
711 Louisiana, Suite 2300
Houston, Texas 77002
Telephone: (713) 223-2300
Facsimile:  (713) 221-1212

-and-

Evan Flaschen
Conn. Bar No. 304232
Evan.Flaschen@bgllp.com
Ilia M. O'Hearn
Conn. Bar No. 423613
Ilia.OHearn@bgllp.com
Goodwin Square
225 Asylum Street, Suite 2600
Hartford, CT 06103
Telephone: (860) 947-9000
Facsimile:  (860) 246-3201

**PROPOSED COUNSEL FOR THE DEBTORS AND DEBTORS-IN-POSSESSION**

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on July 8, 2011, a true and correct copy of this document was served on all parties on the attached master service list by electronic means as listed on the court's ECF noticing system, by electronic mail as indicated, and by United States first class mail, postage prepaid.

*/s/ Jason G. Cohen*
Jason G. Cohen