IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In Re: § | | |
| § | | |
| OMEGA NAVIGATION ENTERPRISES, § | Case No. [11-    ] |
| INC., et al.,[1] § | | |
| § | Joint Administration Requested |
| Debtors. § | Chapter 11 |

**DEBTORS' EMERGENCY MOTION PURSUANT TO 11 U.S.C. §§ 105, 361, 362, AND 363 AND BANKRUPTCY RULES 2002, 4001, AND 9014 (I) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL OF EXISTING SECURED LENDERS, (II) GRANTING ADEQUATE PROTECTION FOR USE THEREOF, AND (III) SCHEDULING FINAL HEARING**

IF YOU WANT A HEARING, YOU MUST REQUEST ONE IN WRITING AND YOU MUST RESPOND SPECIFICALLY TO EACH PARAGRAPH OF THIS PLEADING. YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY ONE (21) DAYS FROM THE DATE YOU WERE SERVED AND GIVE A COPY TO THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF.

IF A PARTY REQUESTS EMERGENCY CONSIDERATION, THE COURT MAY ACT EXPEDITIOUSLY ON THE MATTER. IF THE COURT ALLOWS A SHORTER RESPONSE TIME THAN TWENTY ONE (21) DAYS, YOU MUST RESPOND WITHIN THAT TIME. IF THE COURT SETS AN EMERGENCY HEARING BEFORE THE RESPONSE TIME WILL EXPIRE, ONLY ATTENDANCE AT THE HEARING IS NECESSARY TO PRESERVE YOUR RIGHTS. IF AN EMERGENCY HEARING IS NOT SET, YOU MUST RESPOND BEFORE THE RESPONSE TIME EXPIRES.

THE DEBTORS HAVE REQUESTED THAT THIS MOTION BE CONSIDERED AT THE DEBTORS' FIRST DAY HEARINGS.

---

[1] The Debtors in these chapter 11 cases are Omega Navigation Enterprises, Inc.; Galveston Navigation Inc.; Beaumont Navigation Inc.; Carrolton Navigation Inc.; Decatur Navigation Inc.; Elgin Navigation Inc.; Fulton Navigation Inc.; Orange Navigation Inc.; Baytown Navigation Inc.; and Omega Navigation (USA) LLC.

Omega Navigation Enterprises, Inc. ("Omega")[2] et al., the above-captioned debtors and debtors-in-possession (together, the "Debtors"), by and through their undersigned proposed attorneys, hereby file this motion (the "Motion") for an order, pursuant to Bankruptcy Code §§ 105, 361, 362, and 363 and Bankruptcy Rules 2002, 4001, and 9014, and for entry of an order (i) authorizing the Debtors to use cash collateral of existing secured lenders, (ii) granting adequate protection for the use thereof, and (iii) scheduling a final hearing.  In support thereof, the Debtors would show as follows:

## I.  JURISDICTION AND VENUE

1. This Court has jurisdiction over these cases and this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157.  Venue of these chapter 11 cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested in this Motion are Bankruptcy Code §§ 105, 361, 362, 363 and Bankruptcy Rules 2002, 4001, and 9014.

## II.  BACKGROUND

**Business Description**

2. On July 8, 2011 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11, Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court").  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are operating their businesses and managing their property as debtors-in-possession.  The Debtors have requested joint administration of these chapter 11 cases by motion filed concurrently herewith.  No trustees or examiners have been appointed in these cases.

---

[2] Capitalized terms used but not otherwise defined in this Motion have the meanings ascribed to such terms in the Affidavit of Gregory McGrath (the "First Day Affidavit"), Chief Financial Officer of Omega Navigation Enterprises, Inc., filed on the Petition Date and incorporated herein by reference.

3. Omega is an international provider of marine transportation services focusing on seaborne transportation of refined petroleum products. Omega was founded in 2005 and its corporate headquarters is in Athens, Greece. Omega is the parent company of the Debtors, is incorporated in the Marshall Islands, and completed its initial public offering in April 2006. Omega's Class A Common Shares are traded on the NASDAQ National Market under the symbol "ONAV" and are also listed on the Singapore Exchange Securities Trading Limited under the symbol "ONAV 50."

4. Together, the Debtors wholly own a fleet of eight high specification product tankers. Each wholly-owned vessel is owned by a separate Debtor entity (each a "Vessel Owner"), all of which are wholly-owned by Omega. The vessels have a combined cargo capacity of 512,358 deadweight tons (dwt). All vessels in the Omega fleet are double hull in order to meet the International Maritime Organization regulations banning all single hull tankers by 2010 or 2015, depending on the port or flag state. Omega's product tankers are designed to transport several different refined petroleum products simultaneously in segregated, coated cargo tanks. These cargoes typically include gasoline, jet fuel, kerosene, naphtha, gas oil and heating oil.

5. Omega generates revenues by employing its fleet of vessels on time charters as well as in the spot market. For all of the wholly-owned vessels, Omega provides the commercial management in-house through the wholly-owned non-debtor subsidiary Omega Management, Inc. This management includes obtaining employment for the vessels, negotiating charters, and managing relationships.

6. Technical management of the vessels (e.g. managing day-to-day vessel operations, performing general vessel maintenance, ensuring regulatory and classification society

compliance, oil majors vetting procedures, supervising the maintenance and general efficiency of vessels, arranging hire of qualified officers and crew, arranging and supervising drydocking and repairs, purchasing supplies, spare parts and new equipment for vessels, appointing supervisors and technical consultants and providing other technical support) is provided by the non-debtor Omega Management, Inc. for six of the vessels, and the remainder of the vessels are technically managed by a third party.  Omega is responsible for the strategic management of the fleet, including locating, obtaining financing for, purchasing and selling vessels and formulating and implementing overall business strategies.

**Description of Secured Debt**

7. Omega is a borrower pursuant to that certain senior secured Facilities Agreement for a US$242,720,000.00 Term Loan dated April 7, 2006 (as amended, modified and supplemented), whereby HSH Nordbank AG is, among other things, appointed agent, security agent and trustee, and HSH Nordbank AG, Credit Suisse, The Governor and Company of the Bank of Scotland, and Dresdner Bank AG are lenders (the "Senior Facility").  Approximately $242.72 million is currently outstanding under the Senior Facility.  The Senior Facility is secured by, among other things, Vessel Owners' guarantees, first priority mortgages, first priority assignment of insurances in respect to the vessels, and first priority assignment of each of the vessels' earnings.

8. Importantly, prior to initiating these bankruptcy proceedings, Omega filed two lawsuit in the Courts of the Hellenic Republic (the "Greece Litigation") against the lenders under the Senior Facility (the "Senior Lenders"), and Omega reserves its right to seek further damages or enforce the present lawsuits by the filing of additional suits.

9. In the first suit, Omega asserts, among other things, that the Senior Lenders are in material breach of an agreement whereby they promised to extend the time for repayment of principal under the Senior Facility for three years from the original due date (i.e. extend to April 12, 2014). The Senior Lenders have not honored their agreement and have refused to extend the repayment under the Senior Facility. Omega also asserts, among other things, that the Senior Lenders have engaged in abusive exploitation of the relationship of financial dependence between the Debtors and the Senior Lenders and such conduct is opposite to the good faith and contractual ethics required by European standards of competition, and therefore such actions are invalid. The claims of Omega for abusive exploitation of their dominant position are based on Article 82 of the European Convention and the related European Commission Regulation 1/2003, which are applicable in Greece, as well as pursuant to Greek Law 703/77.

10. In the second lawsuit, Omega asserts, among other things, that Omega has been and continues to be seriously damaged by, among other things, the Senior Lenders' breach and abusive actions. Such damages amount to approximately $570,000,000.00 (plus interest) at the time of filing the second suit, and, via the second suit, Omega seeks indemnification for such damages.

11. Based on the Greece Litigation and the allegations therein, Omega disputes the obligations under the Senior Facility and the claims of the Senior Lenders, as well as the interests granted under the security documents related to the Senior Facility.

12. Omega is also a borrower pursuant to that certain Junior Secured Loan Agreement for a loan of up to US$42,500,000.00 (as amended, modified and supplemented), whereby by The Bank of Tokyo-Mitsubishi UFJ, Ltd, New York Branch ("BTM") and NIBC Bank N.V. are swap banks, NIBC Bank N.V. is appointed agent, and BTM and NIBC Bank N.V. are lenders

(the "Junior Credit Agreement," and together with the Senior Facility, the "Prepetition Indebtedness").  Approximately $36.2 million is outstanding under the Junior Credit Agreement. The Junior Credit Agreement is secured by, among other things, Vessel Owners' guarantees, second priority mortgages, second priority assignment of insurances in respect to the vessels, and second priority assignment of each of the vessels' earnings.

13. Together, the lenders under the Senior Facility and the Junior Credit Agreement are referred to herein as the "Prepetition Lenders."  All collateral securing the Prepetition Indebtedness is referred to herein as the "Prepetition Collateral."

14. Omega is also the borrower under a $5,250,000.00 secured demand convertible promissory note between Omega and One Investments, Inc. dated July 16, 2010 (the "Promissory Note").  The Promissory Note is due on demand at any time after its first anniversary.  The Promissory Note is secured by a pledge of all shares of Omnicrom Holdings Ltd. and a guarantee by Omnicrom Holdings Ltd.  Georgios Kassiotis is the president of One Investments, Inc.  Mr. Kassiotis is also an officer of each of the Debtors and a director of each of the Debtors (except for Omega Navigation (USA) LLC, which is member managed).

### III.  RELIEF REQUESTED

15. As a consequence of the prepetition secured financing, all cash in the Debtors' possession or in which the Debtors have an interest on and after the Petition Date constitutes asserted cash collateral ("Cash Collateral") in which the Prepetition Lenders may assert an interest within the meaning of § 363(a) of the Bankruptcy Code.  By this Motion, pursuant to Bankruptcy Code §§ 105, 361, 362, and 363 and Bankruptcy Rules 2002, 4001, and 9014, the Debtors request that the Court enter an order (i) approving the Debtors' use of Cash Collateral, (ii) providing adequate protection for, and to the extent of, any diminution in the value of the Cash Collateral, and (iii) scheduling a final hearing (the "Final Hearing") for this Court to

consider entry of a final order (the "Final Order") authorizing and approving the relief requested in this Motion.

### IV.  BASIS FOR RELIEF

16.     Under 11 U.S.C. § 363(c)(2), a debtor may use cash collateral if each entity that has an interest in such cash collateral consents or if the Court, after notice and a hearing, authorizes the use of the cash collateral.  Pursuant to 11 U.S.C. § 363(c)(3), the Court must condition a debtor's use of cash collateral as is necessary to provide adequate protection of the interest in the cash collateral claimed by a party.

17.     Bankruptcy Rule 4001(b) and (d) govern the procedure for consideration of motions to use cash collateral, and both of these subsections provide for expedited consideration of such motions for cases in which immediate interim relief may be crucial to the success of a reorganization.

18.     At a hearing on a debtor's motion for the use of cash collateral, the debtor bears the burden of proof on the issue of adequate protection, and the party claiming an interest in the cash collateral bears the burden of proof on the issue of the validity, priority, or extent of the lien.

19.     As of the Petition Date, the Debtors do not have sufficient unencumbered cash to fund their business operations and pay present operating expenses.  The Debtors have an urgent need for the immediate use of the Cash Collateral pending a final hearing on this Motion.

20.     The operation of the Debtors' eight wholly owned vessels is extremely capital intensive, and any laps in operation, no matter how transitory, could have a devastating economic impact on the going concern value of the Debtors' business.  For example, the Debtors incur ongoing operating expenses related to navigating vessels on the high seas, which costs include crew costs, provisions, deck and engine stores, lubricating oils, insurance, maintenance

and repairs, bunkers, port expenses, etc. Absent the use of Cash Collateral, these expenses cannot be met and the sole income producing assets of the Debtors—the vessels—will be unable to operate and could possibly be subject to maritime liens and the threat of seizure at international ports.

21. Accordingly, the Debtors face "immediate and irreparable harm to the estate" absent the emergency consideration of the relief requested in this motion. The immediate use is necessary, and it will stabilize the Debtors' operations and revenue by paying ordinary, postpetition operating expenses, as well as any court approved prepetition expenses that may be at issue. Without authority to use Cash Collateral, the Debtors will not be able to function as a going concern, and will not be able to proceed to consideration of a plan of reorganization. Accordingly, authority to use Cash Collateral is necessary to avoid the shutdown of the Debtors' businesses, and will be in the best interests of the Debtors, their estate and their creditors.

22. The Debtors believe that the Prepetition Lenders are adequately protected for the use of the Cash Collateral in that the orderly liquidation value of the Prepetition Lenders' collateral exceeds the amounts outstanding under the Senior Facility and Junior Credit Agreement. Specifically, as of the Petition Date, the Prepetition Lenders' combined debt is approximately $278.9mm and the book value of the vessels exceeds $390mm. "A sufficient equity cushion is itself a recognized form of adequate protection." *Baybank-Middlesex v. Ralar Distributors, Inc.*, 69 F.3d 1200, 1203 (1st Cir. 1995). Further, "[a] classic method for finding adequate protection is the existence of an equity cushion. In fact, it has been found that an equity cushion standing alone can provide evidence of adequate protection for a secured claim." *In re Patrician St. Joseph Partners Ltd.*, 169 B.R. 669, 677 (D. Ariz. 1994) (citing *In re Mellor*, 734 F.2d 1396, 1400 (9th Cir. 1984)).

23. Additionally, through this Motion, the Debtors intend to provide further adequate protection, to the extent of any diminution in value, to the Prepetition Lenders for the use of the Cash Collateral by offering to maintain the going concern value of the Prepetition Lenders' collateral by using the Cash Collateral to continue to operate the business and by providing to the Prepetition Lenders postpetition replacement liens pursuant to 11 U.S.C. § 361(2) in accounts receivable, including cash generated or received by the Debtors subsequent to the Petition Date, but only to the extent that the Prepetition Lenders had valid, perfected prepetition liens and security interests in such collateral as of the Petition Date.  The priority of any postpetition replacement liens granted to the Prepetition Lenders shall be the same as existed as of the Petition Date.

24. The continuation of the Debtors' operations likely presents the best opportunity for the Prepetition Lenders to receive the greatest recovery on account of their claims. Accordingly, the Debtors submit that use of the Cash Collateral will allow the Debtors to continue their operations and thereby protect the Prepetition Lenders' interests.  Courts have consistently recognized that the preservation of the going concern value of secured lenders' collateral constitutes adequate protection of such creditors' interest in the collateral.  *See, e.g., In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 716 (Bankr. D. Del. 1996) (holding that if there is no actual diminution of value of collateral and the debtor can operate profitably postpetition, then the secured creditor is adequately protected); *In re 499 W. Warren St. Assocs., Ltd. P'ship,* 142 B.R. 53, 56 (Bankr. N.D.N.Y. 1992) (finding a secured creditor's interest in collateral adequately protected when cash collateral was applied to normal operating and maintenance expenditures on the collateral property); *In re Willowood E. Apartments of Indianapolis II, Ltd.*, 114 B.R. 138, 143 (Bankr. S.D. Ohio 1990) (same); *In re Stein,* 19 B.R. 458, 460 (Bankr. E.D.

Pa. 1982) (creditors' secured position would be enhanced by the continued operation of the debtors' business); *In re Aqua Assocs.*, 124 B.R. 192, 196 (Bankr. E.D. Pa. 1991) ("The important question, in determining whether the protection to a creditor's secured interest is adequate, is whether that interest, whatever it is, is being unjustifiably jeopardized.") (citation omitted).

## V.  REQUEST FOR INTERIM AND FINAL RELIEF

25. An immediate need exists for the Debtors to obtain approval of the use of Cash Collateral in order to meet key expenses as described above and as identified in the interim budget ("Interim Budget") attached hereto as **Exhibit A.**  Without the immediate use of the Cash Collateral for an interim period, the Debtors will essentially be forced to call their vessels to port and close their business.  Obviously this would have a severe negative impact upon the Debtors' going concern value and ability to successfully create value for all creditors.  The Debtors' business, as a going concern, has a value far in excess of any value that might be obtained in a chapter 7 liquidation.  A complete shutdown of the Debtors' business, even for a short period, would result in the loss of employees and creditors and equity receiving substantially less from the enterprise than going concern value.  Accordingly, it is imperative that a preliminary hearing be set immediately.

26. Pursuant to Bankruptcy Rule 4001, the Debtors request that the Court set a preliminary hearing on the use of Cash Collateral, and that at such preliminary hearing, the Court authorize the temporary use of Cash Collateral consistent with the Interim Budget, in order to avoid immediate and irreparable harm to these bankruptcy estates pending a final hearing.

27. The Debtors' also request a final hearing as soon as the Court's schedule permits, following 15 days after service of this Motion.

## VI.  NOTICE

**Notice With Respect to Interim Cash Collateral**

28. Notice of this Motion has been or will be provided to (a) the United States Trustee for the Southern District of Texas; (b) the Debtors' known or alleged secured creditors; (c) the thirty (30) largest unsecured creditors of the Debtors (on a consolidated basis); (d) the United States Attorney's Office for the Southern District of Texas; (e) the Internal Revenue Service; (f) any persons who have filed a request for notice pursuant to Bankruptcy Rule 2002; and (g) any other government agencies required to receive notice under applicable Bankruptcy Rules and the Local Rules of the United States Bankruptcy Court for the Southern District of Texas.  The Debtors submit that no further notice of this Motion is required.  The Debtors submit that under the circumstances, no further notice of the interim hearing is necessary and request that any further notice be dispensed with and waived.

**Notice With Respect to Final Cash Collateral**

29. The Debtors respectfully request that the Court set a final hearing date on the Motion and authorize the Debtors to serve a copy of this Motion and any interim order which fixes the time and date for filing objections to this Motion, by first class mail or facsimile or email upon (a) the Office of the United States Trustee for the Southern District of Texas, (b) all known or alleged secured creditors, (c) the 30 largest unsecured non-insider creditors of the Debtors (on a consolidated basis), (d) all known shareholders holding over 5% of a class of equity interests of Omega Navigation Enterprises, Inc., (e) all Debtor professionals, (f) all members of any official committee of unsecured creditors that may be appointed, (g) counsel for, and any professionals retained by, any official committee of unsecured creditors that may be appointed, (h) the United States Attorney's Office for the Southern District of Texas, (i) the Internal Revenue Service, (j) any persons who have filed a request for notice pursuant to

Bankruptcy Rule 2002, and (k) any such other government agencies to the extent required by the Bankruptcy Rules and Local Rules.  The Debtors request that the Court deem such notice of the final hearing to be sufficient notice under Bankruptcy Rule 4001.

WHEREFORE, premises considered, the Debtors request that this Court enter an Order authorizing the Debtors to use Cash Collateral as described herein, setting the Motion for a final hearing, and granting such other and further relief as the Court may deem just and proper.

Respectfully submitted,

**BRACEWELL & GIULIANI LLP**

By:   /s/ *William A. (Trey) Wood III*
      William A. (Trey) Wood III
      Texas Bar No. 21916050
      Trey.Wood@bgllp.com
      Jason G. Cohen
      Texas Bar No. 24050435
      Jason.Cohen@bgllp.com
      711 Louisiana, Suite 2300
      Houston, Texas 77002
      Telephone: (713) 223-2300
      Facsimile:  (713) 221-1212

-and-

Evan Flaschen
Conn. Bar No. 304232
Evan.Flaschen@bgllp.com
Ilia M. O'Hearn
Conn. Bar No. 423613
Ilia.OHearn@bgllp.com
Goodwin Square
225 Asylum Street, Suite 2600
Hartford, CT 06103
Telephone: (860) 947-9000
Facsimile:  (860) 246-3201

**PROPOSED COUNSEL FOR THE DEBTORS AND DEBTORS-IN-POSSESSION**

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on July 8, 2011, a true and correct copy of this document was served on all parties on the attached master service list by electronic means as listed on the court's ECF noticing system, by electronic mail as indicated, and by United States first class mail, postage prepaid.

*/s/ Jason G. Cohen*
Jason G. Cohen