**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **In Re:** | § | |
| | § | |
| **OMEGA NAVIGATION ENTERPRISES,** | § | **Case No. [11-      ]** |
| **INC., et al.,[1]** | § | |
| | § | **Joint Administration Requested** |
| **Debtors.** | § | **Chapter 11** |

**REQUEST FOR EMERGENCY
CONSIDERATION OF CERTAIN "FIRST DAY" MATTERS**

**IF YOU WANT A HEARING, YOU MUST REQUEST ONE IN WRITING AND YOU MUST RESPOND SPECIFICALLY TO EACH PARAGRAPH OF THIS PLEADING.  YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY ONE (21) DAYS FROM THE DATE YOU WERE SERVED AND GIVE A COPY TO THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF.**

**IF A PARTY REQUESTS EMERGENCY CONSIDERATION, THE COURT MAY ACT EXPEDITIOUSLY ON THE MATTER.  IF THE COURT ALLOWS A SHORTER RESPONSE TIME THAN TWENTY ONE (21) DAYS, YOU MUST RESPOND WITHIN THAT TIME.  IF THE COURT SETS AN EMERGENCY HEARING BEFORE THE RESPONSE TIME WILL EXPIRE, ONLY ATTENDANCE AT THE HEARING IS NECESSARY TO PRESERVE YOUR RIGHTS.  IF AN EMERGENCY HEARING IS NOT SET, YOU MUST RESPOND BEFORE THE RESPONSE TIME EXPIRES.**

**THE DEBTORS HAVE REQUESTED THAT THIS MOTION BE CONSIDERED AT THE DEBTORS' FIRST DAY HEARINGS.**

Omega Navigation Enterprises, Inc. ("Omega")[2] et al., the above-captioned debtors and

debtors-in-possession (together, the "Debtors"), by and through their undersigned proposed

---

[1] The Debtors in these chapter 11 cases are Omega Navigation Enterprises, Inc.; Galveston Navigation Inc.; Beaumont Navigation Inc.; Carrolton Navigation Inc.; Decatur Navigation Inc.; Elgin Navigation Inc.; Fulton Navigation Inc.; Orange Navigation Inc.; Baytown Navigation Inc.; and Omega Navigation (USA) LLC.

attorneys, hereby file this request for emergency consideration of certain "First Day" matters.  In

support thereof, the Debtors represent as follows:

## I.  JURISDICTION AND VENUE

1.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper pursuant to 28

U.S.C. §§ 1408 and 1409.

## II.  BACKGROUND

2.       On July 8, 2011 (the "Petition Date"), the Debtors filed voluntary petitions for

relief under chapter 11, Title 11 of the United States Code (the "Bankruptcy Code") in the United

States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court").

Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are operating their

businesses and managing their property as debtors-in-possession.  The Debtors have requested

joint administration of these chapter 11 cases by motion filed concurrently herewith.  No trustees

or examiners have been appointed in these cases.

3.       Omega is an international provider of marine transportation services focusing on

seaborne transportation of refined petroleum products.  Omega was founded in 2005 and its

corporate headquarters is in Athens, Greece.  Omega is the parent company of the Debtors, is

incorporated in the Marshall Islands, and completed its initial public offering in April 2006.

Omega's Class A Common Shares are traded on the NASDAQ National Market under the

symbol "ONAV" and are also listed on the Singapore Exchange Securities Trading Limited

under the symbol "ONAV 50."

---

[2] Capitalized terms used but not otherwise defined in this Motion have the meanings ascribed to such terms in the Affidavit of Gregory McGrath (the "First Day Affidavit"), Chief Financial Officer of Omega Navigation Enterprises, Inc., filed on the Petition Date and incorporated herein by reference.

4.      Together, the Debtors wholly own a fleet of eight high specification product tankers.  Each wholly-owned vessel is owned by a separate Debtor entity (each a "Vessel Owner"), all of which are wholly-owned by Omega.  The vessels have a combined cargo capacity of 512,358 deadweight tons (dwt).  All vessels in the Omega fleet are double hull in order to meet the International Maritime Organization regulations banning all single hull tankers by 2010 or 2015, depending on the port or flag state.  Omega's product tankers are designed to transport several different refined petroleum products simultaneously in segregated, coated cargo tanks.  These cargoes typically include gasoline, jet fuel, kerosene, naphtha, gas oil and heating oil.

1.      Omega generates revenues by employing its fleet of vessels on time charters as well as in the spot market.  For all of the wholly-owned vessels, Omega provides the commercial management in-house through the wholly-owned non-debtor subsidiary Omega Management, Inc.  This management includes obtaining employment for the vessels, negotiating charters, and managing relationships.

5.      Technical management of the vessels (e.g. managing day-to-day vessel operations, performing general vessel maintenance, ensuring regulatory and classification society compliance, oil majors vetting procedures, supervising the maintenance and general efficiency of vessels, arranging hire of qualified officers and crew, arranging and supervising drydocking and repairs, purchasing supplies, spare parts and new equipment for vessels, appointing supervisors and technical consultants and providing other technical support) is provided by the non-debtor Omega Management, Inc. for six of the vessels, and the remainder of the vessels are technically managed by a third party.  Omega is responsible for the strategic management of the fleet,

including locating, obtaining financing for, purchasing and selling vessels and formulating and implementing overall business strategies.

**Description of Secured Debt**

6.      Omega is a borrower pursuant to that certain senior secured Facilities Agreement for a US$242,720,000.00 Term Loan dated April 7, 2006 (as amended, modified and supplemented), whereby HSH Nordbank AG is, among other things, appointed agent, security agent and trustee, and HSH Nordbank AG, Credit Suisse, The Governor and Company of the Bank of Scotland, and Dresdner Bank AG are lenders (the "Senior Facility").  Approximately $242.72 million is currently outstanding under the Senior Facility.  The Senior Facility is secured by, among other things, Vessel Owners' guarantees, first priority mortgages, first priority assignment of insurances in respect to the vessels, and first priority assignment of each of the vessels' earnings.

7.      Importantly, prior to initiating these bankruptcy proceedings, Omega filed two lawsuit in the Courts of the Hellenic Republic (the "Greece Litigation") against the lenders under the Senior Facility (the "Senior Lenders"), and Omega reserves its right to seek further damages or enforce the present lawsuits by the filing of additional suits.

8.      In the first suit, Omega asserts, among other things, that the Senior Lenders are in material breach of an agreement whereby they promised to extend the time for repayment of principal under the Senior Facility for three years from the original due date (i.e. extend to April 12, 2014).  The Senior Lenders have not honored their agreement and have refused to extend the repayment under the Senior Facility.  Omega also asserts, among other things, that the Senior Lenders have engaged in abusive exploitation of the relationship of financial dependence between the Debtors and the Senior Lenders and such conduct is opposite to the good faith and

contractual ethics required by European standards of competition, and therefore such actions are invalid. The claims of Omega for abusive exploitation of their dominant position are based on Article 82 of the European Convention and the related European Commission Regulation 1/2003, which are applicable in Greece, as well as pursuant to Greek Law 703/77.

9.     In the second lawsuit, Omega asserts, among other things, that Omega has been and continues to be seriously damaged by, among other things, the Senior Lenders' breach and abusive actions. Such damages amount to approximately $570,000,000.00 (plus interest) at the time of filing the second suit, and, via the second suit, Omega seeks indemnification for such damages.

10.     Based on the Greece Litigation and the allegations therein, Omega disputes the obligations under the Senior Facility and the claims of the Senior Lenders, as well as the interests granted under the security documents related to the Senior Facility.

11.     Omega is also a borrower pursuant to that certain Junior Secured Loan Agreement for a loan of up to US$42,500,000.00 (as amended, modified and supplemented), whereby by The Bank of Tokyo-Mitsubishi UFJ, Ltd, New York Branch ("BTM") and NIBC Bank N.V. are swap banks, NIBC Bank N.V. is appointed agent, and BTM and NIBC Bank N.V. are lenders (the "Junior Credit Agreement," and together with the Senior Facility, the "Prepetition Indebtedness"). Approximately $36.2 million is outstanding under the Junior Credit Agreement. The Junior Credit Agreement is secured by, among other things, Vessel Owners' guarantees, second priority mortgages, second priority assignment of insurances in respect to the vessels, and second priority assignment of each of the vessels' earnings.

12.     Together, the lenders under the Senior Facility and the Junior Credit Agreement are referred to herein as the "Prepetition Lenders."   All collateral securing the Prepetition Indebtedness is referred to herein as the "Prepetition Collateral."

13.     Omega is also the borrower under a $5,250,000.00 secured demand convertible promissory note between Omega and One Investments, Inc. dated July 16, 2010 (the "Promissory Note").   The Promissory Note is due on demand at any time after its first anniversary.  The Promissory Note is secured by a pledge of all shares of Omnicrom Holdings Ltd. and a guarantee by Omnicrom Holdings Ltd.  Georgios Kassiotis is the president of One Investments, Inc.  Mr. Kassiotis is also an officer of each of the Debtors and a director of each of the Debtors (except for Omega Navigation (USA) LLC, which is member managed).

## III. RELIEF REQUESTED AND BASIS THEREFORE

14.     The Debtors request emergency consideration of the following "First Day" case matters (the "First Day Matters"):

(a)     Emergency Motion Pursuant to Rule 1015 of the Federal Rules of Bankruptcy Procedure Requesting Joint Administration of Chapter 11 Cases (doc. no. 2);

(b)     Emergency Motion to Extend Time to File Schedules of Assets and Liabilities, Schedules of Executory Contracts and Unexpired Leases, and Statement of Financial Affairs (doc. no. 5);

(c)     Emergency Motion for Entry of an Order (I) Authorizing the Debtors to File a Consolidated Creditor Matrix and (II) Granting Authority to Establish the Master Service List Applicable to these Cases (doc. no. 7);

(d)     Emergency Motion for Order (I) Authorizing Debtors to (A) Pay Prepetition Wages and Salaries to Employees and (B) Pay Prepetition Benefits and to Continue Benefit Programs in the Ordinary Course, and (II) Authorizing Financial Institutions to Honor All Related Checks and Electronic Payment Requests (doc. no. 9);

(e)     Emergency Motion for Entry of an Order Authorizing Maintenance of Insurance Policies and Payment of Insurance Premiums and Related Obligations (doc. no. 10);

(f)     Emergency Motion For an Order (i) Authorizing the Debtors to Pay or Honor Prepetition Obligations to Foreign Venders, Service Providers and Governments, and Certain Critical Vendors, and (ii) Authorizing Financial Institutions to Honor all Related Checks and Electronic Payment Requests (doc. no. 11);

(g)     Emergency Motion for an Order (i) Authorizing Continued Use of Existing Business Forms and Records; (ii) Authorizing Maintenance of Existing Corporate Bank Accounts and Cash Management System; and (iii) Waiving the Requirements of 11 U.S.C. § 345(b) (doc. no. 12); and

(h)     Emergency Motion for an Order, Pursuant to Bankruptcy Code §§ 105, 361, 362, and 363 and Bankruptcy Rules 2002, 4001, and 9014, (i) Authorizing the Debtors to Use Cash Collateral of Existing Secured Lenders, (ii) Granting Adequate Protection for the Use Thereof, and (iii) Scheduling a Final Hearing (doc. no. 13).

15.     Emergency consideration of the First Day Matters is critical to the maintenance of the Debtors' estates.  The Debtors presently lack sufficient liquidity to support their operations. In fact, the Debtors have almost no cash with which to operate.  The Debtors need emergency consideration of the First Day Matters in order to meet payroll and other current operating expenses, including, without limitation, insurance, fuel, docking fees, maintenance, lease, and employee obligations.  Without emergency consideration of the First Day Matters, the value of the Debtors' assets could be negatively affected.

## IV.  NOTICE

16.     Notice of this Motion has been or will be provided to upon (a) the Office of the United States Trustee for the Southern District of Texas, (b) all known or alleged secured creditors, (c) the 30 largest unsecured non-insider creditors of the Debtors (on a consolidated basis), (d) all known shareholders holding over 5% of a class of equity interests of Omega Navigation Enterprises, Inc., (e) all Debtor professionals, (f) all members of any official committee of unsecured creditors that may be appointed, (g) counsel for, and any professionals retained by, any official committee of unsecured creditors that may be appointed, (h) the United States Attorney's Office for the Southern District of Texas, (i) the Internal Revenue Service, (j)

-8-

any persons who have filed a request for notice pursuant to Bankruptcy Rule 2002, and (k) any

such other government agencies to the extent required by the Bankruptcy Rules and Local Rules.

The Debtors submit that no further notice of this Motion is required.

## V.  NO PREVIOUS REQUEST

17.     No previous request for the relief sought herein has been made to this or any other

court.

-9-

## VI.  CONCLUSION

WHEREFORE, premises considered, the Debtors respectfully request that the Court

grant this request and set Certain First Day Matters for an emergency hearing.

Respectfully submitted,

**BRACEWELL & GIULIANI LLP**

By:  _/s/ William A. (Trey) Wood III_____
     William A. (Trey) Wood III
     Texas Bar No. 21916050
     Trey.Wood@bgllp.com
     Jason G. Cohen
     Texas Bar No. 24050435
     Jason.Cohen@bgllp.com
     711 Louisiana, Suite 2300
     Houston, Texas 77002
     Telephone:     (713) 223-2300
     Facsimile:     (713) 221-1212

     -and-

     Evan Flaschen
     Conn. Bar No. 304232
     Evan.Flaschen@bgllp.com
     Ilia M. O'Hearn
     Conn. Bar No. 423613
     Ilia.OHearn@bgllp.com
     Goodwin Square
     225 Asylum Street, Suite 2600
     Hartford, CT 06103
     Telephone: (860) 947-9000
     Facsimile:  (860) 246-3201

     **PROPOSED COUNSEL FOR THE DEBTORS
     AND DEBTORS-IN-POSSESSION**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on July 8, 2011, a true and correct copy of this document was served on all parties on the attached master service list by electronic means as listed on the court's ECF noticing system, by electronic mail as indicated, and by United States first class mail, postage prepaid.

*/s/ Jason G. Cohen*
Jason G. Cohen
