# Exhibit 7

39.046

DATED 26 April 2007

BAYTOWN NAVIGATION INC.

- to –

HSH NORDBANK AG
(as Agent)

---

DEED OF ASSIGNMENT
m.v. "OMEGA THEODORE"

---

STEPHENSON HARWOOD
One, St. Paul's Churchyard
London EC4M 8SH
Tel: 020 7329 4422
Fax: 020 7329 7100
Ref: 39.046

BD-#4912197-v1

# Contents

| Clause | | Page |
|---|---|---|
| 1 | Definitions | 2 |
| 2 | Assignment and application of funds | 6 |
| 3 | Continuing security and other matters | 9 |
| 4 | Powers of Mortgagee to protect security and remedy defaults | 10 |
| 5 | Powers of Mortgagee on Event of Default | 11 |
| 6 | Attorney | 11 |
| 7 | Further assurance | 12 |
| 8 | Costs and indemnities | 12 |
| 9 | Remedies cumulative and other provisions | 13 |
| 10 | Notices | 14 |
| 11 | Counterparts | 14 |
| 12 | Severability of provisions | 14 |
| 13 | Law and jurisdiction | 14 |
| Schedule 1 Forms of Loss Payable Clauses | | 16 |
| Schedule 2 Form of Notice of Assignment of Insurances | | 18 |

**THIS DEED OF ASSIGNMENT** is dated 26 April 2007 and made BETWEEN:

(1)  **BAYTOWN NAVIGATION INC.**, a corporation incorporated under the laws of the Marshall Islands, whose registered office is at Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro MH 96960, Marshall Islands (the "**Owner**"); and

(2)  **HSH NORDBANK AG**, a company incorporated under the laws of Germany, whose registered office is at Gerhart-Hauptmann-Platz 50, 20095 Hamburg, Germany (the "**Mortgagee**") as security agent and trustee for and on behalf of itself and the other Finance Parties (as hereinafter defined).

**WHEREAS:**

(A)  by an agreement dated 7 April 2006 (the "**Facilities Agreement**") (as supplemented and amended by a first supplemental agreement dated 28 July 2006, and a second supplemental agreement dated 21 March 2007 and as further supplemented and/or amended from time to time) and made between (1) Omega Navigation Enterprises, Inc. (therein and hereinafter referred to as the "**Borrower**"), (2) the banks and financial institutions set out at Schedule 1 to the Facilities Agreement (the "**Banks**"), (3) HSH Nordbank AG in its capacity as arranger (the "**Arranger**"), (4) HSH Nordbank AG in its capacity as swap bank (the "**Swap Bank**") and (5) HSH Nordbank AG (the "**Agent**", and together with the Banks, the Arranger and the Swap Bank, the "**Finance Parties**" and each a "**Finance Party**") as agent, security agent and trustee on behalf of the Finance Parties, the Banks agreed (inter alia) to advance to the Borrower upon the terms and conditions therein contained the aggregate sum of up to two hundred and ninety five million Dollars ($295,000,000);

(B)  by a master swap agreement dated 7 April 2006 (the "**Master Swap Agreement**") and made between the Borrower and the Swap Bank, comprising an ISDA Master Agreement in the agreed form together with any Confirmations (as defined therein) supplemental thereto, the Borrower agreed the terms and conditions upon which it entered into interest rate swap transaction(s) with the Swap Bank in respect of the Loan (whether in whole or in part as the case may be from time to time);

(C)  pursuant to an intra-group loan agreement dated 21 March 2007 (the "**Intra-Group Loan Agreement**") and made between (1) the Borrower and (2) the Owner, the Borrower has agreed to on-lend to the Owner the sum of forty seven million one hundred and fifty eight thousand six hundred and seventy four Dollars and fifty seven cents ($47,158,674.57) being part of the Loan to assist the Owner in financing the acquisition of the Ship (as hereinafter defined);

(D)  by a corporate guarantee dated 21 March 2007 (the "**Corporate Guarantee**") and executed by (1) the Owner (therein referred to as the "**Guarantor**") in favour of (2) the Agent (as security agent and trustee on behalf of the Finance Parties), the Owner has guaranteed to pay to the Agent all moneys and to discharge all obligations and liabilities now or hereafter due or owing or incurred by the Borrower to the Finance Parties or any of them under or pursuant to the Facilities Agreement, the Master Swap Agreement and the other Security Documents (as defined in the Facilities Agreement) and all interest and all other costs and expenses;

(E)     pursuant to the Facilities Agreement, the Master Swap Agreement and the Corporate
        Guarantee there has been or will be executed by the Owner in favour of the Mortgagee a
        first preferred ship mortgage (the "**Mortgage**") on m.v. "OMEGA THEODORE",
        documented in the name of the Owner under the laws and flag of the Republic of
        Liberia under Official Number 13288 (the "**Ship**") and the Mortgage of even date
        herewith has been or will be registered under the provisions of Chapter 3 of Title 21 of
        the Liberian Code of Laws Revised (as amended) as security for the payment by the
        Owner of the Outstanding Indebtedness;

(F)     by an agency agreement dated 7 April 2007 (the "**Agency Agreement**") and made
        between (1) the Agent as agent, security agent and trustee and (2) the other Finance
        Parties, each of the other Finance Parties has appointed the Agent as its security agent
        and trustee pursuant to a Deed of Trust dated 7 April 2007 and executed by the Agent
        (as trustee) in favour of the Finance Parties, the Agent agreed to hold, receive,
        administer and enforce (inter alia) this Deed for and on behalf of the Finance Parties;
        and

(G)     this Deed is supplemental to the Facilities Agreement, the Master Swap Agreement, the
        Corporate Guarantee and the Mortgage and to the security thereby created and is a
        General Assignment referred to in the Facilities Agreement and the Corporate Guarantee
        but shall nonetheless continue in full force and effect notwithstanding any discharge of
        the Mortgage.

**NOW THIS DEED WITNESSETH AND IT IS HEREBY AGREED** as follows:

**1      Definitions**

**1.1    Defined expressions**

Words and expressions defined in the Facilities Agreement and the Corporate Guarantee
or in the Mortgage shall, unless otherwise defined in this Deed, or the context otherwise
requires, have the same meanings when used in this Deed.

**1.2    Definitions**

In this Deed, unless the context otherwise requires:

"**Assigned Property**" means:

(a)     the Earnings;

(b)     the Insurances; and

(c)     any Requisition Compensation;

"**Casualty Amount**" means five hundred thousand Dollars ($500,000) (or the
equivalent in any other currency);

"**Collateral Instrument**" means notes, bills of exchange, certificates of deposit and
other negotiable and non-negotiable instruments, guarantees, indemnities and other
assurances against financial loss and any other documents or instruments which contain

or evidence an obligation (with or without security) to pay, discharge or be responsible directly or indirectly for, any indebtedness or liabilities of the Owner or any other person liable and includes any documents or instruments creating or evidencing a mortgage, charge (whether fixed or floating), pledge, lien, hypothecation, assignment, trust arrangement or security interest of any kind;

**"Corporate Guarantee"** means the guarantee referred to in recital (D) hereto;

**"Default"** means any Event of Default or any event or circumstance which with the giving of notice or lapse of time or the satisfaction of any other condition (or any combination thereof) would constitute an Event of Default;

**"Earnings"** means all moneys whatsoever from time to time due or payable to the Owner during the Security Period arising out of the use or operation of the Ship including (but without limiting the generality of the foregoing) all freight, hire and passage moneys, income arising under pooling arrangements, compensation payable to the Owner in the event of requisition of the Ship for hire, remuneration for salvage and towage services, demurrage and detention moneys, and damages for breach (or payments for variation or termination) of any charterparty or other contract for the employment of the Ship and any sums recoverable under any loss of earnings insurance;

**"Earnings Account"** means an interest bearing Dollar account of the Owner opened or (as the context may require) to be opened by the Owner with the Account Bank and includes any other account designated in writing by the Account Bank to be the Earnings Account for the purposes of the Facilities Agreement;

**"Expenses"** means the aggregate at any relevant time (to the extent that the same have not been received or recovered by the Mortgagee) of:

(a) all losses, liabilities, costs, charges, expenses, damages and outgoings of whatever nature (including, without limitation, Taxes, repair costs, registration fees and insurance premiums) suffered, incurred or paid by the Mortgagee in connection with the exercise of the powers referred to in or granted by the Facilities Agreement, the Master Swap Agreement, the Corporate Guarantee, the Mortgage, this Deed or any other of the Security Documents or otherwise payable by the Owner in accordance with clause 10 of the Mortgage or clause 8; and

(b) interest on all such losses, liabilities, costs, charges, expenses, damages and outgoings from the date on which the same were suffered, incurred or paid by the Mortgagee until the date of receipt or recovery thereof (whether before or after judgment) at a rate per annum calculated in accordance with clause 3.4 of the Facilities Agreement (as conclusively certified by the Mortgagee);

**"Facilities Agreement"** means the agreement referred to in recital (A) hereto as the same may from time to time be supplemented and/or amended;

**"Finance Parties"** means the Mortgagee, the Arranger, the Swap Bank and the Banks;

**"Guaranteed Liabilities"** means all moneys, obligations and liabilities expressed to be guaranteed by the Owner in clause 2.1 of the Corporate Guarantee;

"**Insurances**" means all policies and contracts of insurance (which expression includes all entries of the Ship in a protection and indemnity or war risks association) which are from time to time during the Security Period in place or taken out or entered into by or for the benefit of the Owner (whether in the sole name of the Owner, or in the joint names of the Owner and the Mortgagee (as security agent and trustee for and on behalf of the Finance Parties) or otherwise) in respect of the Ship and her Earnings or otherwise howsoever in connection with the Ship and all benefits thereof (including claims of whatsoever nature and return of premiums);

"**Loan**" means the principal amount owing to the Banks pursuant to the Facilities Agreement at any relevant time;

"**Loss Payable Clauses**" means the provisions regulating the manner of payment of sums receivable under the Insurances which are to be incorporated in the relevant insurance documents, such provisions to be in the forms set out in Schedule 1, or in such other forms as may from time to time be required or agreed in writing by the Mortgagee;

"**Mortgagee**" includes the successors in title and assignees of the Mortgagee;

"**Notice of Assignment of Insurances**" means a notice of assignment in the form set out in Schedule 2, or in such other form as may from time to time be required or agreed in writing by the Mortgagee;

"**Owner**" includes the successors in title of the Owner;

"**Outstanding Indebtedness**" means the aggregate of the Guaranteed Liabilities and interest accrued and accruing thereon, the Expenses and all other sums of money from time to time owing by the Owner to the Mortgagee and/or any of the other Finance Parties, whether actually or contingently, present or future, under or pursuant to the Corporate Guarantee, this Deed and the other Security Documents to which the Owner is a party or any of them;

"**Requisition Compensation**" means all sums of money or other compensation from time to time payable during the Security Period by reason of the Compulsory Acquisition of the Ship;

"**Security Documents**" means this Deed and:

(a)    the Accounts Pledges;

(b)    the Assignment of Intra-Group Loan Agreements;

(c)    the Charter Assignments;

(d)    any Contract Assignment Consents and Acknowledgements;

(e)    the Deeds of Covenant;

(f)    the Facilities Agreement;

(g)   the General Assignments;

(h)   the Manager's Undertakings;

(i)   the Master Swap Agreement;

(j)   the Master Swap Assignment;

(k)   the Mortgages;

(l)   the Owner's Guarantees;

(m)   any Pre-delivery Security Assignments;

(n)   any Refund Guarantee Assignment Consents and Acknowledgements;

(o)   any Share Charges;

(p)   any Tripartite Deed(s);

and any other such document as is defined in the Facilities Agreement as a Security Document or as may have been or may hereafter be executed to guarantee and/or secure all or any part of the Outstanding indebtedness, interest thereon and other moneys from time to time owing by the Owner pursuant to the Corporate Guarantee; and

**"Security Period"** means the period commencing on the date hereof and terminating upon discharge of the security created by the Security Documents by payment of all moneys payable thereunder.

**1.3   Headings**

Clause headings and the table of contents are inserted for convenience of reference only and shall be ignored in the interpretation of this Deed.

**1.4   Construction of certain terms**

The provisions of clause 1.4 of the Facilities Agreement shall apply to this Deed as if set out herein and as if references therein to **"this Agreement"** were references to **"this Deed"**.

**1.5   Conflict with Facilities Agreement and Corporate Guarantee**

This Deed shall be read together with the Facilities Agreement and the Corporate Guarantee but in case of any conflict, the provisions of the Facilities Agreement shall prevail.

**1.6   Contracts (Rights of Third Parties) Act 1999**

No term of this Deed is enforceable under the Contracts (Rights of Third Parties) Act 1999 by a person who is not a party to this Deed.

## 2      Assignment and application of funds

### 2.1    Assignment

By way of security for payment of the Outstanding Indebtedness the Owner with full title guarantee hereby assigns and agrees to assign to the Mortgagee (as security agent and trustee for and on behalf of the Finance Parties) absolutely all its rights title and interest in and to the Assigned Property and all its benefits and interests present and future therein. Provided however that:

#### 2.1.1    Earnings

the Earnings shall be payable to the Earnings Account until such time as a Default shall occur and the Mortgagee shall direct to the contrary whereupon the Owner shall forthwith, and the Mortgagee may at any time thereafter, instruct the persons from whom the Earnings are then payable to pay the same to the Mortgagee (as security agent and trustees for and on behalf of the Finance Parties) or as it may direct and any Earnings then in the hands of the Owner's brokers or other agents shall be deemed to have been received by them for the use and on behalf of the Mortgagee (as security agent and trustees for and on behalf of the Finance Parties); and

#### 2.1.2    Insurances

unless and until a Default shall occur (whereupon all insurance recoveries, other than any moneys payable under any loss of earnings insurance, shall be receivable by the Mortgagee and applied in accordance with clause 2.3 or clause 2.6 (as the case may be)):

(a)   any moneys payable under the Insurances, other than any moneys payable under any loss of earnings insurance, shall be payable in accordance with the terms of the relevant Loss Payable Clause and the Mortgagee will not in the meantime give any notification to the contrary to the insurers as contemplated by the Loss Payable Clauses;

(b)   any insurance moneys received by the Mortgagee in respect of any major casualty (as specified in the relevant Loss Payable Clause) shall, unless prior to receipt or whilst such moneys are in the hands of the Mortgagee there shall have occurred a Default (whereupon such insurance monies shall be applied in accordance with clause 2.3 or clause 2.6 (as the case may be)), be paid over to the Owner upon the Owner furnishing evidence satisfactory to the Mortgagee that all loss and damage resulting from such casualty has been properly made good and repaired, and that all repair accounts and other liabilities whatsoever in connection with the casualty have been fully paid and discharged by the Owner, provided however that the insurers with whom the fire and usual marine risks insurances are effected may, in the case of a major casualty, and with the previous consent in writing of the Mortgagee, make payment on account of repairs in the course of being effected; and

(c)   any moneys payable under any loss of earnings insurance shall be payable in accordance with the terms of the relevant Loss Payable Clause and shall be subject to such provisions of this clause 2 as shall apply to the Earnings and the

Mortgagee will not give any notification to the insurers as contemplated in such Loss Payable Clause unless and until the Mortgagee shall have become entitled under clause 2.1.1 to direct that the Earnings be paid to the Mortgagee (as security agent and trustee for and on behalf of the Finance Parties).

## 2.2 Notice

The Owner hereby covenants and undertakes with the Mortgagee (as security agent and trustee for and on behalf of the Finance Parties) that it will from time to time upon the written request of the Mortgagee give written notice (in such form as the Mortgagee shall reasonably require) of the assignment herein contained to the persons from whom any part of the Assigned Property is or may be due and that it will procure that the interest of the Mortgagee in the Insurances shall be endorsed on the instruments of insurance from time to time issued in connection with such of the Insurances as are placed with the Approved Brokers by means of a Notice of Assignment of Insurances (signed by the Owner and by any other assured who shall have assigned its interest in the insurances to the Mortgagee).

## 2.3 Application

All moneys received by the Mortgagee (as security agent and trustee for and on behalf of the Finance Parties) in respect of:

2.3.1 recovery under the Insurances (other than under any loss of earnings insurance and any such sum or sums as may have been received by the Mortgagee in accordance with the relevant Loss Payable Clause in respect of a major casualty as therein defined and paid over to the Owner as provided in clause 2.1.2(b) or which fall to be otherwise applied under clause 2.6); and

2.3.2 Requisition Compensation;

shall be held by it upon trust in the first place to pay or make good the Expenses and the balance shall:

(a) in the case of moneys received in respect of sale of the Ship or recovery under the Insurances in relation to a Total Loss of the Ship or her Requisition Compensation:

(i) if no Default has occurred and is continuing, be applied in accordance with clause 4.5 of the Facilities Agreement; or

(ii) if a Default has occurred and is continuing but no Event of Default has occurred and is continuing be retained by the Mortgagee on an interest bearing suspense account until such time as no Default has occurred and is continuing (whereupon such moneys shall be applied in accordance with clause 4.4 of the Facilities Agreement) provided that, until applied in accordance with clause 4.4 of the Facilities Agreement or paragraph (b) below, moneys so retained shall be applied by the Mortgagee in or towards satisfaction of any sums from time to time accruing due and payable by the Owner under the Security Documents or any of them by virtue of payment

demanded thereunder in each case as the Mortgagee may in its absolute
discretion determine; or

(b) in any other case, if an Event of Default has occurred, be applied by the
Mortgagee in the manner specified in clause 13.1 of the Facilities Agreement
and/or (at the absolute discretion of the Mortgagee) sub-clause (a)(ii) above.

**2.4      Shortfalls**

In the event that the balance referred to in clause 2.3 is insufficient to pay in full the
whole of the Outstanding Indebtedness, the Mortgagee (as security agent and trustee for
and on behalf of the Finance Parties) shall be entitled to collect the shortfall from the
Owner or any other person liable for the time being therefor.

**2.5      Application of Earnings received by Mortgagee**

Any moneys received by the Mortgagee (as security agent and trustee for and on behalf
of the Finance Parties) in respect of the Earnings shall:

2.5.1      if received by the Mortgagee, or in the hands of the Mortgagee, prior to the occurrence
of an Event of Default be retained by the Mortgagee and shall be paid over by the
Mortgagee to the Earnings Account at such times, in such amounts and for such
purposes and/or shall be applied by the Mortgagee in or towards satisfaction of any
sums from time to time accruing due and payable by the Owner under the Security
Documents or any of them or by virtue of payment demanded
thereunder, in each case as the Mortgagee may in its absolute discretion determine; and

2.5.2      if received by the Mortgagee, or in the hands of the Mortgagee, after the occurrence of
an Event of Default, be applied by the Mortgagee in the manner specified in
clause 2.3.2(b) and/or clause 2.5.1, as the Mortgagee may in its absolute discretion
determine.

**2.6      Application of Insurances received by Mortgagee**

Subject to clause 2.3, any moneys received by the Mortgagee (as security agent and
trustee for and on behalf of the Finance Parties) in respect of the Insurances (other than
in respect of recovery under any loss of earnings insurance or in respect of a Total Loss)
shall:

2.6.1      if received by the Mortgagee, or in the hands of the Mortgagee, after the occurrence of a
Default but prior to the occurrence of an Event of Default, be retained by the Mortgagee
and shall be paid over by the Mortgagee to the Owner at such times, in such amounts
and for such purposes and/or shall be applied by the Mortgagee in or towards
satisfaction of any sums from time to time accruing due and payable by the Borrower
and/or the Owner under the Security Documents or any of them or by virtue of payment
demanded thereunder, in each case as the Mortgagee may in its absolute discretion
determine; and

2.6.2      if received by the Mortgagee, or in the hands of the Mortgagee, after the occurrence of
an Event of Default, be applied by the Mortgagee in the manner specified in

clause 2.3.2(b) and/or clause 2.6.1, as the Mortgagee may in its absolute discretion determine.

### 2.7 Use of Owner's name

The Owner covenants and undertakes with the Mortgagee (as security agent and trustee for and on behalf of the Finance Parties) to do or permit to be done each and every act or thing which the Mortgagee may from time to time require to be done for the purpose of enforcing the Mortgagee's rights under this Deed and to allow its name to be used as and when required by the Mortgagee for that purpose.

### 2.8 Reassignment

Upon payment and discharge in full to the satisfaction of the Mortgagee (as security agent and trustee for and on behalf of the Finance Parties) of the Outstanding Indebtedness the Mortgagee shall, at the request and cost of the Owner, re-assign the Assigned Property to the Owner or as it may direct.

## 3 Continuing security and other matters

### 3.1 Continuing security

The security created by this Deed shall:

3.1.1 be held by the Mortgagee (as security agent and trustee for and on behalf of the Finance Parties) as a continuing security for the payment of the Outstanding Indebtedness and the performance and observance of and compliance with all of the covenants, terms and conditions contained in the Security Documents, express or implied, and that the security so created shall not be satisfied by any intermediate payment or satisfaction of any part of the amount hereby and thereby secured (or by any settlement of accounts between the Owner or any other person who may be liable to the Mortgagee and/or the other Finance Parties or any of them in respect of the Outstanding Indebtedness or any part thereof and the Mortgagee and/or the other Finance Parties or any of them);

3.1.2 be in addition to, and shall not in any way prejudice or affect, and may be enforced by the Mortgagee without prior recourse to, the security created by any other of the Security Documents or by any present or future Collateral Instruments, right or remedy held by or available to the Mortgagee and/or the other Finance Parties or any of them or any right or remedy of the Mortgagee and/or the other Finance Parties or any of them thereunder; and

3.1.3 not be in any way prejudiced or affected by the existence of any of the other Security Documents or any such Collateral Instrument, rights or remedies or by the same becoming wholly or in part void, voidable or unenforceable on any ground whatsoever or by the Mortgagee and/or the other Finance Parties or any of them dealing with, exchanging, varying or failing to perfect or enforce any of the same, or giving time for payment or performance or indulgence or compounding with any other person liable.

## 3.2 Rights additional

All the rights, powers and remedies vested in the Mortgagee (as security agent and trustee for and on behalf of the Finance Parties) hereunder shall be in addition to and not a limitation of any and every other right, power or remedy vested in the Mortgagee and/or the other Finance Parties or any of them under the Facilities Agreement, the Master Swap Agreement, the Corporate Guarantee, this Deed, the other Security Documents or any Collateral Instrument or at law and all the rights, powers and remedies so vested in the Mortgagee and/or the other Finance Parties or any of them may be exercised from time to time and as often as the Mortgagee may deem expedient.

## 3.3 No enquiry

The Mortgagee shall not be obliged to make any enquiry as to the nature or sufficiency of any payment received by it under the Mortgage and/or this Deed or to make any claim or take any action to collect any moneys hereby assigned or to enforce any rights or benefits hereby assigned to the Mortgagee or to which the Mortgagee (as security agent and trustee for and on behalf of the Finance Parties) may at any time be entitled under the Mortgage and/or this Deed.

## 3.4 Obligations of Owner and Mortgagee

The Owner shall remain liable to perform all the obligations assumed by it in relation to the Assigned Property and the Mortgagee shall be under no obligation of any kind whatsoever in respect thereof or be under any liability whatsoever in the event of any failure by the Owner to perform its obligations in respect thereof.

## 3.5 Discharge of Mortgage

Notwithstanding that this Deed is expressed to be supplemental to the Mortgage it shall continue in full force and effect after any discharge of the Mortgage until for the avoidance of doubt, the Outstanding Indebtedness have been discharged in full.

## 4 Powers of Mortgagee to protect security and remedy defaults

## 4.1 Protective action

The Mortgagee (acting as security agent and trustee for and on behalf of the Finance Parties) shall, without prejudice to its other rights, powers and remedies under any of the Security Documents, be entitled (but not bound) at any time, and as often as may be necessary, to take any such action as it may in its discretion think fit for the purpose of protecting or maintaining the security created by this Deed and the other Security Documents, and all Expenses attributable thereto shall be payable by the Owner on demand.

## 4.2 Remedy of defaults

Without prejudice to the generality of the provisions of clause 4.1, if the Owner fails to comply with the provisions of clause 5.1.1 of the Mortgage, the Mortgagee shall become forthwith entitled (but not bound) to effect and thereafter to maintain all such insurances upon the Ship as in its discretion it may think fit in order to procure the compliance with

such provisions or alternatively, to require the Ship (at the Owner's risk) to remain in, or to proceed to and remain in, a port designated by the Mortgagee until such provisions are fully complied with and the Expenses attributable to the exercise by the Mortgagee (as security agent and trustee for and on behalf of the Finance Parties) of any such powers shall be payable by the Owner on demand.

## 5     Powers of Mortgagee on Event of Default

### 5.1     Powers

At any time after the occurrence of an Event of Default the Mortgagee (as security agent and trustee for and on behalf of the Finance Parties) shall forthwith be entitled (but not bound) as and when it may see fit, to exercise in relation to the Assigned Property or any part thereof all or any of the rights, powers and remedies possessed by it as assignee and/or chargee of the Assigned Property (whether at law, by virtue of this Deed or otherwise) and in particular (without limiting the generality of the foregoing):

5.1.1   to require that all policies, contracts, certificates of entry and other records relating to the Insurances (including details of and correspondence concerning outstanding claims) be delivered forthwith to such adjusters and/or brokers and/or other insurers as the Mortgagee may nominate;

5.1.2   to collect, recover, compromise and give a good discharge for,  all claims then outstanding or thereafter arising under the Insurances or any of them or in respect of the Assigned Property or any part thereof, and to take over or institute (if necessary using the name of the Owner) all such proceedings in connection therewith as the Mortgagee in its absolute discretion thinks fit, and, in the case of the Insurances, to permit any brokers through whom collection or recovery is effected to charge the usual brokerage therefor;

5.1.3   to discharge, compound, release or compromise claims in respect of the Assigned Property or any part thereof which have given or may give rise to any charge or lien or other claim on the Assigned Property or any part thereof or which are or may be enforceable by proceedings against the Assigned Property or any part thereof; and

5.1.4   to recover from the Owner on demand all Expenses incurred or paid by the Mortgagee in connection with the exercise of the powers (or any of them) referred to in this clause 5.1.

## 6     Attorney

### 6.1     Appointment

By way of security, the Owner hereby irrevocably appoints the Mortgagee (as security agent and trustee for and on behalf of the Finance Parties) to be its attorney generally for and in the name and on behalf of the Owner, and as the act and deed or otherwise of the Owner to execute, seal and deliver and otherwise perfect and do all such deeds, assurances, agreements, instruments, acts and things which may be required for the full exercise of all or any of the rights, powers or remedies conferred hereby or which may be deemed proper in or in connection with all or any of the purposes aforesaid.  The

power hereby conferred shall be a general power of attorney under the Powers of Attorney Act 1971, and the Owner ratifies and confirms, and agrees to ratify and confirm, any deed, assurance, agreement, instrument, act or thing which the Mortgagee may execute or do pursuant thereto. Provided always that such power shall not be exercisable by or on behalf of the Mortgagee until the happening of any Event of Default.

## 6.2   Exercise of power

The exercise of such power by or on behalf of the Mortgagee (as security agent and trustee for and on behalf of the Finance Parties) shall not put any person dealing with the Mortgagee upon any enquiry as to whether any Event of Default has happened, nor shall such person be in any way affected by notice that no such Event of Default has happened, and the exercise by the Mortgagee of such power shall be conclusive evidence of the Mortgagee's right to exercise the same.

## 6.3   Filings

The Owner hereby irrevocably appoints the Mortgagee (as security agent and trustee for and on behalf of the Finance Parties) to be its attorney in its name and on its behalf and as its act and deed or otherwise of it to agree the form of and to execute and do all deeds, instruments, acts and things in order to file, record, register or enrol this Deed in any court, public office or elsewhere which the Mortgagee may in its discretion consider necessary or advisable, now or in the future, to ensure the legality, validity, enforceability or admissibility in evidence thereof and any assurance, document, act or thing required to be executed by the Owner pursuant to clause 7.

## 7   Further assurance

The Owner hereby further undertakes at its own expense from time to time to execute, sign, perfect, do and (if required) register every such further assurance, document, act or thing as in the opinion of the Mortgagee may be necessary or desirable for the purpose of more effectually mortgaging, assigning and charging the Assigned Property or perfecting the security constituted or intended to be constituted by this Deed.

## 8   Costs and indemnities

## 8.1   Costs

The Owner shall pay to the Mortgagee (as security agent and trustee for and on behalf of the Finance Parties) on demand on a full indemnity basis all expenses or liabilities of whatever nature (including legal fees, fees of insurance advisers, printing, out-of-pocket expenses, stamp duties, registration fees and other duties or charges) together with any value added tax or similar tax payable in respect thereof, incurred by the Mortgagee in connection with the exercise or enforcement of, or preservation of any rights under, this Deed, the Facilities Agreement, the Master Swap Agreement, the Corporate Guarantee, the Mortgage or any of the other Security Documents or otherwise in respect of the Outstanding Indebtedness and the security therefor, or in connection with the preparation, completion, execution or registration of this Deed, the Facilities

Agreement, the Master Swap Agreement, the Corporate Guarantee, the Mortgage or any of the other Security Documents.

**8.2** **Mortgagee's indemnity**

The Owner hereby agrees and undertakes to indemnify the Mortgagee (as security agent and trustee for and on behalf of the Finance Parties) against all losses, actions, claims, expenses, demands, obligations and liabilities whatever and whenever arising which may now or hereafter be incurred by the Mortgagee and/or any of the other Finance Parties or by any manager, agent, officer or the Corporate Guarantee, employee for whose liability, act or omission the Mortgagee may be answerable in respect of, in relation to, or in connection with anything done or omitted in the exercise or purported exercise of the powers contained in this Deed, the Facilities Agreement, the Master Swap Agreement, the Corporate Guarantee, the Mortgage or any of the other Security Documents or otherwise in connection with such powers or with this Deed or with the Ship, its Earnings, Requisition Compensation and Insurances or otherwise howsoever in relation to, or in connection with, any of the matters dealt with in this Deed, the Facilities Agreement, the Master Swap Agreement, the Corporate Guarantee, the Mortgage or any of the other Security Documents.

**9** **Remedies cumulative and other provisions**

**9.1** **No implied waivers; remedies cumulative**

No failure or delay on the part of the Mortgagee and/or any of the other Finance Parties to exercise any right, power or remedy vested in it under this Deed, the Facilities Agreement, the Master Swap Agreement, the Corporate Guarantee, the Mortgage or any of the other Security Documents shall operate as a waiver thereof, nor shall any single or partial exercise by the Mortgagee and/or any of the other Finance Parties of any right, power or remedy nor the discontinuance, abandonment or adverse determination of any proceedings taken by the Mortgagee and/or any of the other Finance Parties to enforce any right, power or remedy preclude any other or further exercise thereof or proceedings to enforce the same or the exercise of any other right, power or remedy, nor shall the giving by the Mortgagee and/or any of the other Finance Parties of any consent to any act which by the terms of this Deed requires such consent prejudice the right of the Mortgagee and/or any of the other Finance Parties to give or withhold consent to the doing of any other similar act. The remedies provided in this Deed, the Facilities Agreement, the Master Swap Agreement, the Corporate Guarantee, the Mortgage and the other Security Documents are cumulative and are not exclusive of any remedies provided by law.

**9.2** **Delegation**

The Mortgagee (as security agent and trustee for and on behalf of the Finance Parties) shall be entitled, at any time and as often as may be expedient, to delegate all or any of the powers and discretions vested in it by this Deed, the Facilities Agreement, the Master Swap Agreement, the Corporate Guarantee, the Mortgage (including the power vested in it by clause 11 of the Mortgage) or any of the other Security Documents in such manner, upon such terms, and to such persons as the Mortgagee in its absolute discretion may think fit.

**9.3     Incidental powers**

The Mortgagee (as security agent and trustee for and on behalf of the Finance Parties) shall be entitled to do all acts and things incidental or conducive to the exercise of any of the rights, powers or remedies possessed by it as mortgagee of the Ship (whether at law, under this Deed or otherwise) and in particular (but without prejudice to the generality of the foregoing) upon becoming entitled to exercise any of its powers under clause 7.1 of the Mortgage, the Mortgagee shall be entitled to discharge any cargo on board the Ship (whether the same shall belong to the Owner or any other person) and to enter into such other arrangements respecting the Ship, the insurances, management, maintenance, repair, classification and employment in all respects as if the Mortgagee was the owner of the Ship, but without being responsible for any loss incurred as a result of the Mortgagee doing or omitting to do any such acts or things as aforesaid.

**10     Notices**

The provisions of clause 17.1 of the Facilities Agreement and clause 9 of the Corporate Guarantee shall apply mutatis mutandis in respect of any certificate, notice, demand or other communication given or made under this Deed.

**11     Counterparts**

This Deed may be entered into in the form of two counterparts, each executed by one of the parties, and, provided both the parties shall so execute this Deed, each of the executed counterparts, when duly exchanged or delivered, shall be deemed to be an original but, taken together, they shall constitute one instrument.

**12     Severability of provisions**

Each of the provisions in this Deed are severable and distinct from the others, and if at any time one or more such provisions is or becomes invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions of this Deed shall not in any way be affected or impaired thereby.

**13     Law and jurisdiction**

**13.1    Law**

This Deed is governed by, and shall be construed in accordance with, English law.

**13.2    Submission to jurisdiction**

For the benefit of the Mortgagee and each of the other Finance Parties, the parties hereto irrevocably agree that any legal action or proceedings in connection with this Deed may be brought in the English courts,  or in the courts of any other country chosen by the Mortgagee, each of which shall have jurisdiction to settle any disputes arising out of or in connection with this Deed.  The Owner irrevocably and unconditionally submits to the jurisdiction of the English courts and the courts of any country chosen by the Mortgagee and irrevocably designates, appoints and empowers HTD Services Limited at present of Irongate House, Duke's Place, London EC3A 7HX to receive, for it and on its behalf, service of process issued out of the English courts in any legal action or

proceedings arising out of or in connection with this Deed.  The submission to such jurisdiction shall not (and shall not be construed so as to) limit the right of the Mortgagee (as security agent and trustee for and on behalf of the Finance Parties) to take proceedings against the Owner in any other court of competent jurisdiction nor shall the taking of proceedings in any one or more jurisdictions preclude the taking of proceedings in any other jurisdiction, whether concurrently or not.

The parties further agree that only the courts of England and not those of any other State shall have jurisdiction to determine any claim which the Owner may have against the Mortgagee arising out of or in connection with this Deed.

**IN WITNESS** whereof this Deed has been duly executed as a deed the day and year first above written.

**Schedule 1**

**Forms of Loss Payable Clauses**

**1      Hull and machinery (marine and war risks)**

By a General Assignment dated                                    2007, **BAYTOWN NAVIGATION INC.,** of Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro MH 96960, Marshall Islands (the "**Owner**") has assigned to **HSH NORDBANK AG** of Gerhart-Hauptmann-Platz 50, 20095 Hamburg, Germany (the "**Mortgagee**") (as security agent and trustee on behalf of the Finance Parties (as therein defined) (the "**Finance Parties**")) all the Owner's rights, title and interest in and to all policies and contracts of insurance from time to time taken out or entered into by or for the benefit of the Owner in respect of m.v. "OMEGA THEODORE" and accordingly:

(a)    all claims hereunder in respect of an actual or constructive or compromised or arranged total loss, and all claims in respect of a major casualty (that is to say any casualty the claim in respect of which exceeds five hundred thousand Dollars ($500,000) (or the equivalent in any other currency) inclusive of any deductible) shall be paid in full to the Mortgagee (as security agent and trustee for and on behalf of the Finance Parties) or to its order; and

(b)    all other claims hereunder shall be paid in full to the Owner or to its order, unless and until the Mortgagee shall have notified the insurers hereunder to the contrary, whereupon all such claims shall be paid to the Mortgagee (as security agent and trustee for and on behalf of the Finance Parties) or to its order.

**2      War risks**

It is noted that **HSH NORDBANK AG** of Gerhart-Hauptmann-Platz 50, 20095 Hamburg, Germany (the "**Mortgagee**") (as security agent and trustee on behalf of the Finance Parties (as therein defined) (the "**Finance Parties**")) is interested as First Mortgagee in the subject matter of this insurance.  Save as hereinafter provided, all claims (whether in respect of actual, constructive, arranged or compromised total loss or otherwise) which, but for this Loss Payable Clause would be payable to **BAYTOWN NAVIGATION INC.,** of Trust Company Complex, Ajeltake Island, Majuro MH 96960, Marshall Islands (the "**Owner**") shall be payable to the Mortgagee (as security agent and trustee for and on behalf of the Finance Parties), provided always that unless and until notice in writing to the contrary has been received by the Association, claims (other than total loss claims) not exceeding five hundred thousand Dollars ($500,000) (or the equivalent in any other currency) in respect of any one claim shall be paid direct to the Owner or to its order.

**3      Protection and indemnity risks**

Payment of any recovery which **BAYTOWN NAVIGATION INC.,** of Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro MH 96960, Marshall Islands (the "**Owner**") is entitled to make out of the funds of the Association in respect of any liability, costs or expenses incurred by the Owner, shall be made to the Owner or to its order, unless and until the Association receives notice to the contrary from **HSH**

**NORDBANK AG** of Gerhart-Hauptmann-Platz 50, 20095 Hamburg, Germany (the "**Mortgagee**") (as security agent and trustee on behalf of the Finance Parties (as therein defined) (the "**Finance Parties**")) in which event all recoveries shall thereafter be paid to the Mortgagee (as security agent and trustee for and on behalf of the Finance Parties) or their order; provided always that no liability whatsoever shall attach to the Association, its Managers or their agents for failure to comply with the latter obligation until the expiry of two clear business days from the receipt of such notice.

4      **Loss of earnings**

By a General Assignment dated                                    2007, **BAYTOWN NAVIGATION INC.,** of Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro MH 96960, Marshall Islands (the "**Owner**") has assigned to **HSH NORDBANK AG** of Gerhart-Hauptmann-Platz 50, 20095 Hamburg, Germany (the "**Mortgagee**") (as security agent and trustee on behalf of the Finance Parties (as therein defined) (the "**Finance Parties**")) its rights, title and interest in and to all policies and contracts of insurance from time to time taken out or entered into by or for the benefit of the Owner in respect of m.v. "OMEGA THEODORE" and her earnings and accordingly all claims hereunder shall be paid in full to the account of the Owner with the Mortgagee with account number 1100333844 unless and until the Mortgagee (as security agent and trustee for and on behalf of the Finance Parties) shall have notified the insurers hereunder to the contrary, whereupon all such claims shall be paid to the Mortgagee (as security agent and trustee for and on behalf of the Finance Parties) or its order.

**Schedule 2**

**Form of Notice of Assignment of Insurances**

(For attachment by way of endorsement to the Policy)


**BAYTOWN NAVIGATION INC.,** of Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro MH 96960, Marshall Islands the Owner of the m.v. "OMEGA THEODORE" HEREBY    GIVES    NOTICE    that    by    a    General    Assignment    dated    2007 and entered into by us with **HSH NORDBANK AG** of Gerhart-Hauptmann-Platz 50, 20095 Hamburg, Germany (as security agent and trustee on behalf of the Finance Parties (as therein defined) (the "**Finance Parties**")), there has been assigned by us to **HSH NORDBANK AG** as mortgagees (as security agent and trustee for and on behalf of the Finance Parties) of the said vessel all insurances in respect thereof, including the insurances constituted by the Policy whereon this notice is endorsed.


...............................................
**Signed**
For and on behalf of
**BAYTOWN NAVIGATION INC.**

..............................................................2007

**SIGNED, SEALED** and **DELIVERED** )
as a **DEED** )
by CHARILAOS LOUKOPOULOS )
for and on behalf of )
**BAYTOWN NAVIGATION INC.** )
pursuant to a power of attorney )
dated 21 March 2007 )
in the presence of: DIMITRIOS BEIS )

Attorney-in-Fact

....................

Witness

Name:

Address:

Occupation:


**SIGNED, SEALED** and **DELIVERED** )
as a **DEED** )
by ALEXANDROS DAMIANIDIS )
for and on behalf of )
**HSH NORDBANK AG** )
pursuant to a power of attorney )
dated 21 March 2007 )
in the presence of: DIMITRIOS BEIS )

Attorney-in-Fact

....................

Witness

Name:

Address:

Occupation:

BD-#4912197-v1                                         19