

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
07/11/2011

| | | |
|---|---|---|
| In Re: | § § | |
| OMEGA NAVIGATION ENTERPRISES, INC., et al.,[1] | § § § | Case No. 11-35926 |
| | § | Joint Administration Requested |
| Debtors. | § § | Chapter 11 |

## INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL OF EXISTING SECURED LENDERS, (II) GRANTING ADEQUATE PROTECTION FOR USE THEREOF, AND (III) SCHEDULING FINAL HEARING

The Court has considered the emergency motion of Omega Navigation Enterprises, Inc. ("Omega")[2] et al., the above-captioned debtors and debtors-in-possession (together, the "Debtors"), for an order, pursuant to Bankruptcy Code §§ 105, 361, 362, and 363 and Bankruptcy Rules 2002, 4001, and 9014, and for entry of an order (i) authorizing the Debtors to use cash collateral of existing secured lenders, (ii) granting adequate protection for the use thereof, and (iii) scheduling a final hearing (the "Motion").

### Findings of Fact and Conclusions of Law

Having considered the Motion, evidence proffered or presented, and arguments of counsel, the Court hereby finds and concludes on an interim basis as follows:

---

[1] The Debtors in these chapter 11 cases are Omega Navigation Enterprises, Inc.; Galveston Navigation Inc.; Beaumont Navigation Inc.; Carrolton Navigation Inc.; Decatur Navigation Inc.; Elgin Navigation Inc.; Fulton Navigation Inc.; Orange Navigation Inc.; Baytown Navigation Inc.; and Omega Navigation (USA) LLC.

[2] Capitalized terms used but not otherwise defined in this Order have the meanings ascribed to such terms in the Motion.

### Jurisdiction

A. This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. § 1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (D), (G), (K), (M) and (O). Venue is proper in this district pursuant to 28 U.S.C. § 1409.

### Notice

B. Under the circumstances, the notice given by the Debtors of the Motion and the Interim Hearing constitute due and sufficient notice thereof and complies with Rules 2002 and 4001(b) of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") and the local rules of this Court.

### Factual Background

C. Each of Debtors filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on July 8, 2011 (the "Petition Date").

D. The Debtors are continuing in the management and operation of their businesses and properties as debtors and debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases.

E. To date, the Office of the United States Trustee (the "U.S. Trustee") has not appointed an official committee of unsecured creditors (the "Committee").

F. The lenders under that certain senior secured Facilities Agreement for a US$242,720,000.00 Term Loan dated April 7, 2006 (as amended, modified and supplemented), (the "Senior Facility") assert a first priority lien in all Cash Collateral.[3]

---

[3] Attached hereto as **Exhibit B** is a description of the Debtors' prepetition secured indebtedness as prepared by the Senior Lenders. The Debtors have no objection to placing the Senior Lenders' description before the Court but do not stipulate to such description and reserve all rights with respect thereto, including the fact that the description erroneously indicates that

G. The lenders ("Junior Lenders") under that certain Junior Secured Loan Agreement for a loan of up to US$42,500,000.00 (as amended, modified and supplemented), (the "Junior Credit Agreement," and together with the Senior Facility, the "Prepetition Indebtedness") assert a second lien on all Cash Collateral.

H. Together, the lenders under the Senior Facility and the Junior Credit Agreement are referred to herein as the "Prepetition Lenders." All collateral securing the Prepetition Indebtedness is referred to herein as the "Prepetition Collateral."

I. As a consequence of the prepetition secured financing, all cash in the Debtors' possession or in which the Debtors have an interest on and after the Petition Date constitutes asserted cash collateral ("Cash Collateral") in which the Prepetition Lenders may assert an interest within the meaning of § 363(a) of the Bankruptcy Code.

J. Omega is also the borrower under a $5,250,000.00 secured demand convertible promissory note between Omega and One Investments, Inc. dated July 16, 2010 (the "Promissory Note"). The Promissory Note is due on demand at any time after its first anniversary. The Promissory Note is secured by a pledge of all shares of Omnicrom Holdings Ltd. and a guarantee by Omnicrom Holdings Ltd. George Kassiotis is the president of One Investments, Inc. Mr. Kassiotis is also an officer of each of the Debtors and a director of each of the Debtors (except for Omega Navigation (USA) LLC, which is member managed).

### Limited Use of Cash Collateral

K. The Debtors require the use of the Cash Collateral of the Prepetition Lenders in order to continue their ordinary course business operations and to maintain the value of their bankruptcy estates. The Debtors are permitted to use the Cash Collateral, on an interim basis, on

---

each Debtor granted security interests in "all or substantially all of its assets." This Order makes no findings regarding the description provided in Exhibit B.

*Parties to notice*

✱ the terms and conditions provided for herein, commencing on the Petition Date and expiring on _____, 2011 (the "Interim Period"). The Debtors shall not make use of Cash Collateral except in accordance with the terms and conditions contained in this Interim Cash Collateral Order.

L. The Debtors are permitted to use the Cash Collateral solely for such purposes set forth in the Interim Budget (as defined below) in order to avoid immediate and irreparable harm to the Debtors' bankruptcy estates which will occur if this Interim Cash Collateral Order is not immediately approved.

M. Good, adequate, and sufficient cause has been shown to justify the granting of the relief requested herein. The Debtors' interim use of Cash Collateral is necessary to preserve the bankruptcy estates, and will avoid immediate and irreparable harm to the Debtors, their bankruptcy estates and assets, prior to the expiration of the period specified herein.

## ORDER

Accordingly, it is therefore ORDERED that:

1. The Motion is hereby granted in accordance with the terms of this Interim Order. Any objections to the Motion with respect to the entry of this Interim Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled. To the extent that any findings of fact may constitute conclusions of law, and vice versa, they are hereby deemed as such.

2. The Debtors are hereby authorized, on a limited basis, to use Cash Collateral only as provided in strict accordance with the terms and conditions provided in this Interim Cash Collateral.

3. The Debtors shall be permitted to use Cash Collateral solely to pay the expenses described in the expenditures contained in the budget attached hereto as Exhibit A (the "Interim Budget") for the Interim Period, solely up to the amounts, at the times and for the purposes identified in the Interim Budget. The Debtors shall not, without the prior written consent of the Prepetition Lenders,[4] use Cash Collateral with respect to any single week in the Interim Budget in an amount in excess of the aggregate amount budgeted for that week, provided however, that there shall be a permitted variance of 15% in the aggregate for any amounts listed in the Interim Budget for a particular week. Notwithstanding the foregoing, for exceptional, unanticipated expenditures that are not contemplated by the budget, the Debtors and the Prepetition Lenders may agree that such expenditures, if approved, are not credited against the permitted aggregate variance. Any amounts listed in the Interim Budget that are unused in any week may be carried over and used by the Debtors in any subsequent week and any unused amounts may be utilized for any other line item within the week or a subsequent week or weeks.

4. The Debtors and the Prepetition Lenders may extend the Interim Period, without further notice to creditors or order of this Court, provided that a Stipulation Extending Cash Collateral Order signed by counsel to the Debtors and counsel to the Prepetition Lenders is filed together with a copy of a budget if there are changes from the Interim Budget attached hereto as Exhibit A.

### Adequate Protection to the Prepetition Lenders

5. The Prepetition Lenders are entitled, pursuant to section 105, 361, 362, and 363 of the Bankruptcy Code, to adequate protection of their interests in the Cash Collateral on account

---

[4] There is a Coordination Agreement (intercreditor agreement) between the Senior Lenders and the Junior Lenders. The Debtors express no view as to whether, pursuant the Coordination, the Senior Lenders are entitled to provide consents that are automatically binding on the Junior Lenders.

HOUSTON\3417749.10 -5-

of the Debtors' use of the Cash Collateral and any other diminution in value for any reason whatsoever, including, but not limited to, arising out of the automatic stay or the Debtors' use, sale, lease, depreciation, depletion, or disposition of the Cash Collateral or the Prepetition Collateral, as the case may be (each such diminution, a "<u>Diminution in Value</u>").

6. As adequate protection to the Prepetition Lenders for the aggregate Diminution in Value, the Prepetition Lenders shall be and hereby are granted (effective upon the Petition Date and without the necessity of the execution or filing by the Debtors or Prepetition Lenders of mortgages, security agreements, pledge agreements, financing statement, or otherwise), the following:

<u>Adequate Protection Liens</u>. To the extent of any Diminution of Value of their respective interests in the Prepetition Collateral, the Prepetition Lenders shall have valid and perfected additional and replacement security interests in, and liens upon (the "<u>Adequate Protection Liens</u>"), all of the Debtors' right, title and interest in, to, and under all of the Debtors' now owned and after-acquired cash, and cash collateral of the Debtors (whether maintained with the Prepetition Lenders or other financial institutions), any investment of such cash and cash collateral, inventory, accounts receivable, any cause of action (excluding avoidance or other actions arising under chapter 5 of the Bankruptcy Code), and the proceeds thereof (whether recovered by judgment, settlement or otherwise, but not including the Greece Litigation or any other causes of action brought against the Prepetition Lenders), any right to payment whether arising before or after the Petition Date, and the proceeds, products, rents and profits of all of the foregoing, (collectively, the "<u>Adequate Protection Collateral</u>"); and

<u>Adequate Protection Superpriority Claims.</u> To the extent of any Diminution of Value of their respective interests in the Prepetition Collateral, the Prepetition Lenders are each hereby granted, in addition to claims under section 503(b) of the Bankruptcy Code, and subject to the relative priorities between the Prepetition Lenders as set forth below, and subject to the Carve-Out (defined below), an allowed superpriority administrative expense claim pursuant to section 507(b) of the Bankruptcy Code in each of the Cases, (collectively, the "<u>Adequate Protection Superpriority Claims</u>"), which shall at all times be payable from and have recourse to all Collateral and proceeds thereof.

7. The Adequate Protection Liens granted to the Senior Lenders shall be senior to all other security interests in, liens on, or claims against any of the Collateral, including the

Adequate Protection Liens granted to the Junior Lenders. The Adequate Protection Liens granted to the Junior Lenders shall be junior to: (A) the Adequate Protection Liens and the Adequate Protection Superpriority Claim granted to the Senior Lenders under this or any other order of the Court entered in these cases; (B) the liens under the Senior Facility; and (C) the obligations under the Senior Facility. The Adequate Protection Liens granted to the Junior Lenders shall otherwise be senior to all other security interests in, liens on, or claims against any of the Collateral, and shall at all times be subject to the Coordination Agreement.

8. The Adequate Protection Superpriority Claim granted to the Junior Lenders shall be junior to (x) any Adequate Protection Superpriority Claim granted to the Senior Lenders hereunder or under any other order of this Court and (y) the claims of the Senior Lenders in respect of the obligations under the Senior Facility, and shall at all times be subject to the Coordination Agreement. Except for the respective priorities set forth herein, the Adequate Protection Superpriority Claims shall have priority over all administrative expense claims (subject to the Carve Out, defined below) and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever.

9. Nothing herein shall limit the rights of the Prepetition Lenders to seek new or different adequate protection (but without prejudice to the rights of the Debtors to object to such new or different adequate protection).

10. Notwithstanding anything in the foregoing paragraphs, all liens and claims the Prepetition Lenders, regardless of their nature or priority (including but not limited to the Adequate Protection Liens and Adequate Protection Superpriority Claims) shall be subject to the Debtors' dispute as to the liens and claims of the Senior Lenders and to the Carve-Out as defined below.

### Carve-Out

11. As used herein, the term "Carve-Out" shall mean, during the Interim Period, (i) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the Clerk of the Bankruptcy Court (the "Statutory Fees"), and (ii) the allowed fees and expenses of the professionals engaged by the Debtors (including without limitation Bracewell & Giuliani LLP and Jefferies & Co., Inc.) or any Committee, if appointed, (regardless of whether incurred prior to or after a Termination Event), in an amount of $1,075,000.00 for allowed fees and expenses of the professionals engaged by the Debtors and Committee, if appointed. All liens and claims of the Junior Lenders, irrespective of their nature or priority, shall be subject to the Carve-Out. Subject to the parties' stipulations and the Court's ruling and comments on the record, and subject to entry of a final order, all liens and claims of the Senior Lenders, irrespective of their nature or priority, shall be subject to the Carve-Out, to the extent the Senior Lenders are oversecured.

12. The dollar amounts available to be paid under the Carve-Out shall be deemed reduced to the extent proceeds of any Prepetition Collateral or Postpetition Collateral are used to pay fees or expenses of any professionals arising from and after the Petition Date. The Prepetition Lenders retain any and all rights as a party-in-interest to object to any claims of any professionals.

### Other

13. The Debtors shall provide continued maintenance of, and insurance on, the Ships and all of their other assets and property in the amounts and for the risk, and by the entities, consistent with the Debtors' prepetition practices.

14. Nothing contained in this Interim Order shall be deemed to terminate, modify or release any obligations of any non-debtor guarantor to any Prepetition Agent or any Prepetition Finance Party with respect to the Senior Facilities Obligations or the Junior Facility Obligations.

15. Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Lenders hereunder is insufficient to compensate for any Diminution in Value of their respective interests in the Prepetition Indebtedness documents during these cases.

16. The failure of any Prepetition Lender to seek relief or otherwise exercise its rights and remedies under this Interim Order, the Prepetition Indebtedness documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of any Prepetition Lender.

17. The Debtors and the Prepetition Lenders negotiated at arms-length and have acted in good faith (including, without limitation, for the purposes of section 363(m) of the Bankruptcy Code) in connection with this Interim Order. However the Debtors acknowledge that they have not agreed to all of the Prepetition Lenders' comments on the draft of this Order and that, as a result thereof, the Prepetition Lenders may be objecting to portions of this revised draft of the Order. In such event, this Court overrules all such objections except as stated on the record at the hearing in respect hereof.

18. The provisions of this order shall be binding upon and shall inure to the benefit of the Prepetition Lenders and the Debtors and their respective successors and assigns (including, without limitation, any trustee or other fiduciary hereafter appointed for the Debtors or with respect to the Debtors' property).

19. Pursuant to Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

20. Entry of this Order shall be without prejudice to any and all rights, remedies, claims and causes of action which the Debtors and the Prepetition Lenders may have against each other, all such rights, remedies, claims and causes of action are specifically preserved.

21. This Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

### Final Hearing

*to be noticed later*

22. Pursuant to Bankruptcy Rule 4001, the final hearing (the "Final Hearing") on the Motion shall be held and is hereby scheduled for _____, 2011, at ___:___ __.m. before this Court. Objections to the requested relief shall be filed with the Court no later than _____, 2011 at ___:___ __.m. and served upon (i) the Debtors; (ii) the Debtors' counsel; (ii) the United States Trustee; (iii) the Prepetition Lenders; (iv) the Prepetition Lenders' counsel; (v) all secured creditors of the Debtors; and (vi) any other party that has filed a notice of appearance in these chapter 11 cases. The Debtors shall promptly mail copies of this Order to each of the parties receiving notice of the Motion, as well as any other entity known to the Debtors that might have an interest in the prepetition collateral and any other party that has filed and served a special request for notice with this Court.

Dated: 7-11-11

UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT A
(interim budget)

**Omega Navigation Enterprises, Inc.**
**Interim Cash Flow Budget**

*($ in USD)*

| | | Jul-11 | | | Aug-11 | |
|---|---|---|---|---|---|---|
| Week Commencing | 7/11/11 | 7/18/11 | 7/25/11 | 8/1/11 | | 4 Week Total |
| **Beginning of Period Cash Balance** | $244,568 | $1,810,453 | $1,462,033 | $852,149 | | $244,568 |
| **Cash Inflows** | | | | | | |
| Voyage Revenue | $ 2,768,000 | $ - | $ - | $ 434,000 | $ | 3,202,000 |
| Management Fees | - | - | 296,136 | - | | 296,136 |
| **Total Cash Inflows** | $ 2,768,000 | $ - | $ 296,136 | $ 434,000 | $ | 3,498,136 |
| **Cash Outflows** | | | | | | |
| Voyage Expense | $ (707,115) | $ - | $ (516,020) | $ (5,425) | $ | (1,644,975) |
| Vessel Operating Expenses | - | (73,420) | - | (348,420) | | (478,000) |
| Management Fees | (162,000) | (10,000) | (250,000) | (19,000) | | (208,000) |
| General and Administrative | (153,000) | (15,000) | (40,000) | (56,000) | | (478,000) |
| Maintenance CapEx | - | - | - | - | | - |
| Professional Fees | (180,000) | (250,000) | (100,000) | - | | (530,000) |
| **Total Cash Outflows** | $ (1,202,115) | $ (348,420) | $ (906,020) | $ (428,845) | $ | (2,885,400) |
| **Net Cash Flow From Operations** | $ 1,745,885 | $ (98,420) | $ (509,884) | $ 5,155 | $ | 612,736 |
| Payments to Critical Vendors | - | (250,000) | (100,000) | - | | - |
| **Net Cash Flow** | $ 1,565,885 | $ (348,420) | $ (609,884) | $ 5,155 | $ | 612,736 |
| **End of Period Cash Balance** | $ 1,810,453 | $ 1,462,033 | $ 852,149 | $ 857,304 | $ | 857,304 |

Source: Omega Management

# EXHIBIT B

This is a description of the Senior Lenders' Prepetition Indebtedness as prepared by the Senior Lenders, together with their view as to what comprises their cash collateral, without any editing by the Debtors. The Debtors have no objection to placing the Senior Lenders' description before the Court but do not stipulate to such description and reserve all rights with respect thereto. This Order makes no findings regarding this description. The Debtors note that the Senior Lenders have also provide a similar description of the Junior Lenders' Prepetition Indebtedness but the Debtors defer to the Junior Lenders as to whether they wish to include their own description.

A. *Prepetition Secured Indebtedness*.

    *(i)    Senior Facilities*.

        (a)    Senior Facilities Agreement. Omega Navigation Enterprises, Inc., ("Omega"), as borrower (in such capacity, the "Borrower"), certain banks as lenders (the "Senior Facilities Lenders"), and HSH Nordbank AG ("HSH Nordbank"), as agent (in such capacity, the "Senior Facilities Agent"), swap bank (in such capacity, the "Senior Swap Bank"), and arranger (together with the Senior Facilities Lenders, the Senior Facilities Agent and the Senior Swap Bank, the "Senior Finance Parties"), are parties to that certain Facilities Agreement dated as of April 7, 2006 (as amended, supplemented or otherwise modified, the "Senior Facilities Agreement"), pursuant to which, among other things, (x) the Senior Facilities Lenders made Advances (as defined in the Senior Facilities Agreement, and collectively, the "Senior Loan") to or for the benefit of the Borrower and the other Debtors and (y) the Borrower agreed to cause all amounts payable to it or any of the other Debtors in respect of revenues and earnings generated by operations of the Ships ("Earnings") to be paid to the Earnings Accounts (as defined below).[5]

        (c)    Senior Facilities Guarantees. Each of the Debtors other than Omega (each in such capacity, a "Guarantor", and collectively, the "Guarantors"),

---

[5]    The Senior Swap Bank and Omega were counterparties to that certain ISDA Master Swap Agreement, dated as of April 7, 2006 (such IDSA Master Swap Agreement, as amended, supplemented or otherwise modified, together with all related confirmations, supplements and schedules, the "Master Swap Agreement"), pursuant to which the parties entered into certain interest rate hedging arrangements in respect of the Loans. The Master Swap Agreement expired on or about April 12, 2011.

on the one hand, and the Senior Facilities Agent, on the other hand, are parties to the Guarantee (collectively, the "Senior Facilities Guarantees") set forth opposite the name of such Guarantor on Schedule 1 hereto, pursuant to which each of the Guarantors guaranteed payment of all amounts owed or incurred by, and the discharge of all of the liabilities and obligations of, the Borrower under the Senior Facilities Agreement and the other Senior Facilities Documents (as defined below) to which the Borrower is a party (together with all other liabilities and obligations defined as "Guaranteed Liabilities" in each Guarantee, the "Guaranteed Liabilities").

(d)     Senior Facilities Security Documents.  Each Debtor is a party to the documents, agreements and instruments set forth in this subparagraph (d) below or opposite its name on Schedule 1 hereto (the "Senior Facilities Security Documents", and together with the Senior Facilities Agreement, the Senior Facilities Guarantees, and all other documents, agreements and instruments executed or delivered from time to time in connection therewith or related thereto, as amended, supplemented or otherwise modified, the "Senior Facilities Documents"), pursuant to which, among other things, as described more fully below, such Debtor pledged, mortgaged or assigned (absolutely or as collateral), to the Senior Facilities Agent, and granted in favor of the Senior Facilities Agent liens on and security interests in (the "Senior Facilities Liens") all or substantially all of its assets and property (the "Senior Facilities Collateral") as security for repayment of, as the case may be, the Senior Loan, the Guaranteed Liabilities of such Debtor, and all interest, fees, Expenses (as defined in each of the General Assignments (as defined below)) and all other liabilities and obligations of such Debtor under the Senior Facilities Documents to which it is a party (collectively, and as described more fully in subparagraph (e) below, the "Senior Facilities Obligations").

(1)     Omega Security.  Omega is party to those certain Pledge Agreements set forth opposite its name on Schedule 1 hereto (as amended, supplemented or otherwise modified, the "Omega Pledge Agreements"), pursuant to which Omega pledged to the Senior Finance Parties as collateral for repayment of the outstanding Senior Facilities Obligations all present and future credit balances from time to time standing to the credit of certain of Omega's accounts maintained at HSH Nordbank AG, identified in the Omega Pledge Agreements and set forth on Schedule 1 hereto.[6]

---

[6]     Omega had advanced the aggregate amount of the Senior Loan to the other Debtors pursuant to the separate loan agreements between Omega, as lender, and each other Debtor, as borrower (collectively, the "Intra-Group Loan Agreements"), to enable such other Debtor to finance its Ship. Omega and the Senior Facilities Agent are also parties to that certain Assignment of Intra-Group Loan Agreements, dated April 12, 2006 (as amended, supplemented or otherwise modified), pursuant to which Omega assigned to the Senior Facilities Agent, absolutely and as collateral securing repayment of its Senior Facilities Obligations, all of its

(2) <u>Ship Mortgages</u>. Each of the Guarantors owns the vessel and is party to the ship mortgage (as amended, supplemented or otherwise modified, the "<u>Mortgages</u>") set forth opposite its name on <u>Schedule 1</u> hereto, pursuant to which, among other things, it mortgaged its Ship (as defined in the applicable Mortgage and set forth on <u>Schedule 1</u>) to the Senior Facilities Agent as security for repayment of the Senior Facilities Obligations of such Guarantor.

(3) <u>General Assignments of Earnings, etc.</u>. Each of the Guarantors is party to the General Assignment or Deed of Assignment set forth opposite its name on <u>Schedule 1</u> hereto (as amended, supplemented or otherwise modified, the "<u>General Assignments</u>"), pursuant to which such Guarantor (x) assigned to the Senior Facilities Agent, absolutely and as security for payment of the Senior Facilities Obligations of such Guarantor, all of its right, title and interest to all amounts payable to such Guarantor arising out of use or operation of its Ship, and all other Earnings, Insurances and Requisition Compensation (each as defined, and to the extent provided, in the applicable General Assignment), and (y) agreed to cause all persons from whom Earnings are payable to pay such amounts directly to the applicable Earnings Accounts (as defined below) or as the Senior Facilities Agent otherwise directs.

(4) <u>Pledge of Earning Accounts</u>. Each of the Guarantors is party to the Pledge Agreement set forth opposite its name on <u>Schedule 1</u> hereto (as amended, supplemented or otherwise modified, the "<u>Guarantor Pledge Agreements</u>"), pursuant to which such Guarantor pledged to the Senior Finance Parties all present and future credit balances from time to time standing to the credit of such Guarantor's bank account maintained with HSH Nordbank AG identified in the Guarantor Pledge Agreement and set forth on <u>Schedule 1</u> hereto (the "<u>Earnings Accounts</u>"), including interest, as collateral for all existing and future receivables and claims which the Senior Facilities Lenders have or will have against or in respect of Omega based on the Senior Facilities Agreement.

(e) <u>Senior Facilities Obligations</u>. As of the Petition Date, the Senior Facilities Obligations are comprised of, the outstanding Senior Loans in the aggregate principal amount of $242,720,000, plus amounts advanced by any Senior Finance Party in connection with the preservation, maintenance, operation or liquidation (including in these Cases and any Successor Cases (as defined below)) of any Senior Facilities Collateral, plus all interest thereon and all fees, expenses (including any attorneys', accountants', consultants', appraisers' and financial advisors' fees that are chargeable or reimbursable under the Senior Facilities Documents),

---

rights, title and interest in and to the Intra-Group Loan Agreements and all its benefits and interests, present and future, under such agreements.

charges and other obligations incurred in connection therewith as provided in the Senior Facilities Documents.

(f) <u>Cash Collateral</u>. The Senior Faculties Agent asserts that all cash or deposits in, and all balances credited to, the Debtors' bank accounts constitutes Earnings of the applicable Debtor, and all Earnings and all cash, negotiable instruments, documents of title, securities or other cash equivalents in which the Debtors have an interest, whenever acquired and wherever located, constitutes original collateral or proceeds of other Senior Facilities Collateral, and in all cases are the cash collateral within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral") of the Senior Facilities Agent and the Senior Finance Parties.

## Senior Facilities Guarantees and Security Documents
(also as prepared by the Senior Lenders and not stipulated to by the Debtors)

| Senior Finance Party | Mortgaged Vessel | Documents |
|---|---|---|
| Omega Navigation Enterprises, Inc. | N/A | Pledge Agreement, dated 5/29/06, between Omega Navigation Enterprises Inc., as Pledgor, and HSH Nordbank AG, as Pledgee regarding account no. 2006052610032 maintained at HSH Nordbank AG<br><br>Pledge Agreement, dated 4/12/06, between Omega Navigation Enterprises, Inc., as Pledgor, HSH Nordbank AG, as Agent, and the Banks (as defined therein), as Pledgees regarding account nos. 1100313082 and 1100313339 maintained at HSH Nordbank AG |
| Galveston Navigation Inc. | Omega Lady Miriam | Guarantee, dated 8/1/06, between Galveston Navigation Inc., as Guarantor, and HSH Nordbank AG, as Agent<br><br>First Preferred Marshall Islands Ship Mortgage on m.v. "Omega Lady Miriam", dated 8/1/06, by Galveston Navigation Inc., as Owner, in favor of HSH Nordbank AG, as Mortgagee<br><br>Marshall Islands General Assignment relating to m.v. "Omega Lady Miriam", dated 8/1/06, by Galveston Navigation Inc., as Owner, in favor of HSH Nordbank AG, as Mortgagee<br><br>Notice of Assignment of Earnings for M.V. "Omega Lady Miriam", dated 2/3/11, by Galveston Navigation Inc. to ST Shipping Transport PTE Limited<br><br>Pledge Agreement, dated 7/28/2006, between Galveston Navigation Inc., as Pledgor, HSH Nordbank AG, as Agent, and the Banks (as defined therein), as Pledgees regarding account no. 1100313386 maintained at HSH Nordbank AG |
| Beaumont Navigation Inc. | Omega Lady Sarah | Guarantee, dated 6/30/06, between Beaumont Navigation Inc., as Guarantor, and HSH Nordbank AG, as Agent<br><br>First Preferred Marshall Islands Ship Mortgage on m.v. "Omega Lady Sarah", dated 6/30/06, by Beaumont Navigation Inc., as Owner, in favour of HSH Nordbank AG, as Mortgagee<br><br>Marshall Islands General Assignment relating to m.v. "Omega Lady Sarah", dated 6/30/06, between Beaumont Navigation Inc., as Owner, and HSH Nordbank AG, as Mortgagee<br><br>Notice of Assignment of Earnings for M.V. "Omega Lady Sarah", dated 2/3/11, by Beaumont Navigation Inc. to ST Shipping Transport PTE Limited |

| Senior Finance Party | Mortgaged Vessel | Documents |
|---|---|---|
| | | Pledge Agreement, dated 6/30/06, between Beaumont Navigation Inc., as Pledgor, HSH Nordbank AG, as Agent, and the Banks (as defined therein), as Pledgees regarding account no. 1100313364 maintained at HSH Nordbank AG |
| Carrolton Navigation Inc. | Omega Prince | Guarantee, dated 6/27/06, between Carrolton Navigation Inc., as Guarantor, and HSH Nordbank AG, as Agent<br><br>First Preferred Marshall Islands Ship Mortgage on m.v. "Omega Prince", dated 6/27/06, by Carrolton Navigation Inc., as Owner, in favour of HSH Nordbank AG, as Mortgagee<br><br>Marshall Islands General Assignment relating to m.v. "Omega Prince", dated 6/27/06, between Carrolton Navigation Inc., as Owner, and HSH Nordbank AG, as Mortgagee<br><br>Notice of Assignments of Earnings for M.V. "Omega Prince", dated 2/3/11, by Carrolton Navigation Inc. to ST Shipping Transport PTE Limited<br><br>Pledge Agreement, dated 6/27/06, between Carrolton Navigation Inc., as Pledgor, HSH Nordbank AG, as Agent, and the Banks (as defined thererin), as Pledgees regarding account no. 1100313285 maintained at HSH Nordbank AG |
| Decatur Navigation Inc. | Omega Princess | Guarantee, dated 7/3/06, between Decatur Navigation Inc., as Guarantor, and HSH Nordbank AG, as Agent<br><br>First Preferred Marshall Islands Ship Mortgage on m.v. "Omega Princess", dated 7/3/06, by Decatur Navigation Inc., as Owner, in favour of HSH Nordbank AG, as Mortgagee<br><br>Marshall Islands General Assignment relating to m.v. "Omega Princess", dated 7/3/06, between Decatur Navigation Inc., as Owner, and HSH Nordbank AG, as Mortgagee<br><br>Notice of Assignment of Earnings for M.V. "Omega Princess", dated 2/3/11, by Decatur Navigation Inc. to ST Shipping Transport PTE Limited<br><br>Pledge Agreement, dated 7/3/06, between Decatur Navigation Inc., as Pledgor, HSH Nordbank AG, as Agent, and the Banks (as defined therein), as Pledgees regarding account no. 1100313263 maintained at HSH Nordbank AG |

| Senior Finance Party | Mortgaged Vessel | Documents |
|---|---|---|
| Elgin Navigation Inc. | Omega Queen | Guarantee, dated 5/29/06, between Elgin Navigation Inc., as Guarantor, and HSH Nordbank AG, as Agent<br><br>First Preferred Marshall Islands Ship Mortgage on m.v. "Omega Queen", dated 5/29/06, by Elgin Navigation Inc., as Owner, in favour of HSH Nordbank AG, as Mortgagee<br><br>Marshall Islands General Assignment relating to m.v. "Omega Queen", dated 5/29/06, between Elgin Navigation Inc., as Owner, and HSH Nordbank AG, as Mortgagee<br><br>Notice of Assignment of Earnings for M.V. "Omega Queen", dated 2/3/11, by Elgin Navigation Inc. to ST Shipping Transport PTE Limited<br><br>Pledge Agreement, dated 5/29/06, between Elgin Navigation Inc., as Pledgor, HSH Nordbank AG, as Agent, and the Banks (as defined therein), as Pledgees regarding account no. 11 00 31 32 44 maintained at HSH Nordbank AG |
| Fulton Navigation Inc. | Omega King | Guarantee, 6/14/06, between Fulton Navigation Inc., as Guarantor, and HSH Nordbank AG, as Agent<br><br>First Preferred Marshall Islands Ship Mortgage on m.v. "Omega King", dated 6/14/06, by Fulton Navigation Inc., as Owner, in favour of HSH Nordbank AG, as Mortgagee<br><br>Amendment No. 1 to First Preferred Mortgage on m.v. "Omega King", dated 3/28/08, between Fulton Navigation Inc., as Owner, and HSH Nordbank AG, as Mortgagee<br><br>Marshall Islands General Assignment relating to m.v. "Omega King", dated 6/14/06, between Fulton Navigation Inc., as Owner, and HSH Nordbank AG, as Mortgagee<br><br>Notice of Assignment of Earnings for M.V. "Omega King", dated 2/3/11, by Fulton Navigation Inc. to Cape Tankers Inc.<br><br>Pledge Agreement, dated 6/14/06, between Fulton Navigation Inc., as Pledgor, HSH Nordbank AG, as Agent, and the Banks (as defined therein), as Pledgees regarding account no. 1100313345 maintained at HSH Nordbank AG |
| Orange Navigation Inc. | Omega Emmanuel | Guarantee and Indemnity, dated March 21, 2007, between Orange Navigation Inc., as Guarantor, and HSH Nordbank AG, as Agent<br><br>First Preferred Liberian Mortgage m.v. "Omega Emmanuel" (ex Hull No. S-1205), dated 3/27/07, by Orange Navigation Inc., as |

| Senior Finance Party | Mortgaged Vessel | Documents |
|---|---|---|
| | | Owner, in favour of HSH Nordbank AG, as Mortgagee |
| | | Deed of Assignment m.v. "Omega Emmanuel", dated 3/27/07, between Orange Navigation Inc., as Owner, and HSH Nordbank AG, as Mortgagee |
| | | Notice of Assignment of Earnings for M.V. "Omega Emmanuel", dated 2/3/11, by Orange Navigation Inc. to ST Shipping Transport PTE |
| | | Pledge Agreement, dated 3/27/07, between Orange Navigation Inc., as Pledgor, HSH Nordbank AG, as Agent, and the Banks (as defined therein), as Pledgees regarding account no. 1100333822 maintained at HSH Nordbank AG |
| Baytown Navigation Inc. | Omega Theodore | Guarantee and Indemnity, dated March 21, 2007, between Baytown Navigation Inc., as Guarantor, and HSH Nordbank AG, as Agent |
| | | First Preferred Liberian Mortgage m.v. "Omega Theodore" (ex Hull No. S-1206), dated 4/26/07, by Baytown Navigation Inc., as Owner, in favour of HSH Nordbank AG, as Mortgagee |
| | | Deed of Assignment m.v. "Omega Theodore", dated 4/26/07, between Baytown Navigation Inc., as Owner, and HSH Nordbank AG, as Mortgagee |
| | | Notice of Assignment of Earnings for M.V. "Omega Theodore", dated 2/3/11, by Baytown Navigation Inc. to ST Shipping Transport PTE Limited |
| | | Pledge Agreement, dated 4/26/07, between Baytown Navigation Inc., as Pledgor, HSH Nordbank AG, as Agent, and the Banks (as defined therein), as Pledgees regarding account no. 1100333844 maintained at HSH Nordbank AG |