

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

**ENTERED**
**08/02/2011**

| | | |
|---|---|---|
| **In Re:** | § | |
| | § | |
| **BAYTOWN NAVIGATION, INC., et al.,**[1] | § | **Case No. 11-35926** |
| | § | |
| | § | **Jointly Administered** |
| **Debtors.** | § | **Chapter 11** |

### FINAL ORDER (I) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL OF EXISTING SECURED LENDERS, AND (II) GRANTING ADEQUATE PROTECTION FOR USE THEREOF

The Court has considered the emergency motion of Omega Navigation Enterprises, Inc. ("Omega")[2] et al., the above-captioned debtors and debtors-in-possession (together, the "Debtors"), for an order, pursuant to Bankruptcy Code §§ 105, 361, 362, and 363 and Bankruptcy Rules 2002, 4001, and 9014, and for entry of an order (i) authorizing the Debtors to use cash collateral of existing secured lenders, (ii) granting adequate protection for the use thereof, and (iii) scheduling a final hearing, dated July 8, 2011 [Dkt. No. 13] (the "Motion").

### Findings of Fact and Conclusions of Law

Having considered the Motion, evidence proffered or presented, and arguments of counsel, the Court hereby finds and concludes as follows for the limited purpose of this Order only:

---

[1] The Debtors in these chapter 11 cases are Omega Navigation Enterprises, Inc.; Galveston Navigation Inc.; Beaumont Navigation Inc.; Carrolton Navigation Inc.; Decatur Navigation Inc.; Elgin Navigation Inc.; Fulton Navigation Inc.; Orange Navigation Inc.; Baytown Navigation Inc.; and Omega Navigation (USA) LLC.

[2] Capitalized terms used but not otherwise defined in this Order have the meanings ascribed to such terms in the Motion.

## Jurisdiction

A.      This Court has jurisdiction over these chapter 11 cases and the parties and property affected hereby pursuant to 28 U.S.C. § 1334.  Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (D), (G), (K), (M) and (O).  Venue of these cases is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## Notice

B.      The notice given by the Debtors of the Motion and the Final Hearing (defined below) constitute due and sufficient notice thereof and complies with Rules 2002 and 4001(b) of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") and the local rules of this Court.

## Factual Background

C.      Each of the Debtors filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on July 8, 2011 (the "Petition Date").

D.      The Debtors are continuing in the management and operation of their businesses and properties as debtors and debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these cases.

E.      To date, the Office of the United States Trustee (the "U.S. Trustee") has not appointed an official committee of unsecured creditors (the "Committee").

F.      HSH Nordbank AG, as agent (in such capacity, the "Senior Facilities Agent"), asserts that pursuant to the Senior Facilities Agreement and the other Senior Facilities Documents, the Debtors are indebted to the Senior Facilities Lenders in the principal amount of at least US$242,720,000.00 (plus accrued and accruing interest, fees, expenses and all other amounts included in the Senior Facilities Obligations), and that the Senior Facilities Liens

constitute valid, perfected, enforceable and unavoidable first priority liens on, security interests in and assignments of (as the case may be), <u>inter alia</u>, the Ships, the Cash Collateral (defined below) and all other Senior Facilities Collateral.[3]

G.    The lenders ("<u>Junior Lenders</u>") under that certain Junior Secured Loan Agreement, dated March 27, 2008, for a loan of up to US$42,500,000.00 (as amended, modified and supplemented) (the "<u>Junior Credit Agreement</u>,") assert a second lien on inter alia, the Ships, all Cash Collateral and all other Prepetition Collateral (defined below).

H.    Together, the Senior Facilities Lenders and the Junior Lenders are referred to herein as the "<u>Prepetition Lenders</u>."  The Senior Facilities Collateral and all collateral securing the Junior Credit Agreement are referred to herein as the "<u>Prepetition Collateral</u>."

I.    The Prepetition Lenders assert that all cash and cash equivalents in the Debtors' possession or in which the Debtors have an interest on and after the Petition Date constitute Prepetition Collateral and therefore constitute cash collateral of the Prepetition Lenders within the meaning of § 363(a) of the Bankruptcy Code (the "<u>Cash Collateral</u>").

J.    Omega asserts that it is also the borrower under a $5,250,000.00 secured demand convertible promissory note between Omega and One Investments, Inc. dated July 16, 2010 (the "<u>Promissory Note</u>"); that the Promissory Note is due on demand at any time after its first anniversary; that the Promissory Note is secured by a pledge of all shares of Omnicrom Holdings Ltd. and a guarantee by Omnicrom Holdings Ltd.  Mr. Georgios Kassiotis is the president of One

---

[3] Attached hereto as **Exhibit B** is a description of the Debtors' prepetition senior secured indebtedness as prepared by the Senior Lenders.  Capitalized terms used but not defined herein shall have the meanings given them in Exhibit B hereto.  The Debtors have no objection to placing the Senior Facilities Lenders' description before the Court, and for convenience to use in this Final Order certain of the defined terms contained therein, but do not stipulate to such description and reserve all rights with respect thereto.  This Final Order makes no findings regarding the description provided in Exhibit B.

Investments, Inc. Mr. Kassiotis is also an officer of each of the Debtors and a director of each of the Debtors (except for Omega Navigation (USA) LLC, which is member managed).

K.     The Debtors in the Motion have requested the use of Cash Collateral in order to continue their ordinary course business operations and to preserve and maintain the value of their bankruptcy estates.  The Senior Facilities Agent filed an objection to the Motion dated July 10, 2011 [Dkt. No. 3], and appeared at an interim hearing before this Court (the "Interim Hearing") held on July 11, 2011.  Subject to the stipulations and agreements made on the record at the Interim Hearing, the Debtors were granted permission to use the Cash Collateral, on an interim basis through August 1, 2011 (the "Interim Period"), on the terms and conditions set forth in that certain Interim Order (I) Authorizing the Debtors to Use Cash Collateral of Existing Secured Lenders, (II) Granting Adequate Protection For Use Thereof and (III) Scheduling Final Hearing, dated July 11, 2011 [Dkt. No. 33] (the "Interim Order").

L.     The Court in the Interim Order scheduled a final hearing on the Motion for August 1, 2011 (the "Final Hearing").  The Senior Agent filed a statement in respect of the Motion, dated July 29, 2011 [Dkt. No. 93.]  The Court held the Final Hearing on August 1, 2011.

M.     Good, adequate, and sufficient cause has been shown to justify the granting of the relief requested in this Order (the "Final Order").  The Debtors' interim use of Cash Collateral is necessary to preserve the bankruptcy estates, and will avoid immediate and irreparable harm to the Debtors, their bankruptcy estates and assets, prior to the expiration of the period specified herein.

## ORDER

Accordingly, it is therefore ORDERED that:

### Limited Use of Cash Collateral

1.     Subject to the stipulations and agreements made on the record at the Final Hearing, the Motion is hereby granted in accordance with the terms of this Final Order.  Subject to the stipulations and agreements made on the record at the Final Hearing, any objections to the Motion with respect to the entry of this Final Order that have not been withdrawn, waived, settled or otherwise resolved on the record before the Court at the Interim and Final Hearings, and all reservations of rights included therein, are hereby denied and overruled.  To the extent that any findings of fact may constitute conclusions of law, and vice versa, they are hereby deemed as such.

2.     The Debtors are hereby authorized to use Cash Collateral during the Specified Period (defined below) only in strict accordance with the terms and conditions provided in this Final Order.  As used herein, "Specified Period" means the period from the date of this Final Order through the earliest to occur of (i) October 3, 2011 (as may be extended by further order of the Court or written agreement between the Debtors and the Senior Facilities Agent and Junior Lenders), (ii) expiration of the Notice Period (defined below), without prejudice to the rights of the Senior Facilities Agent and the Prepetition Lenders to take any action contemplated in paragraphs 9 or 14 hereof, which are expressly reserved, and (iii) the date the use of Cash Collateral under this Order is otherwise terminated by further order of this Court.

3.     The Debtors shall be permitted to use Cash Collateral during the Specified Period solely to pay the expenses described in the 13-week cash flow forecast of the Debtors' cash receipts and cash expenditures attached hereto as **Exhibit A** (as amended, extended,

supplemented or otherwise modified in accordance herewith, the "Budget"), and solely up to the amounts, at the times and for the purposes identified in the Budget.[4]   The Debtors shall not, without the prior written consent of the Prepetition Lenders, use Cash Collateral with respect to any Budget line item in any week in an amount in excess of the aggregate amount for such line item set forth in the Budget for such week, provided that there shall be a permitted variance of 15% in the aggregate for the "Cash Outflow" line item amounts (other than the "Professional Fees" line item) listed in the Budget for any week (collectively, the "Operating Cash Outflows") (provided if the variance for the Operating Cash Outflows ever exceeds 10% in the aggregate, the permitted variance for the Operating Cash Outflows in any subsequent week under the Budget may not exceed 15% on a line item by line item basis and Voyage Expenses and the Vessel Operating Expenses shall be combined and treated as one line item), and a separate permitted variance of 15% in the aggregate for the "Professional Fee" line items listed in the Budget for any week.  Any line item amounts listed in the Budget that are unused in any week may be carried over and used by the Debtors for such line item in subsequent weeks and any unused amounts for any "Total Cash Outflows" line item (other than the "Professional Fees" line item) may be utilized for any other "Total Cash Outflows" line item (other than the "Professional Fees" line item) within the week or a subsequent week or weeks. Notwithstanding the foregoing, for exceptional, unanticipated expenditures that are not specified in the Budget, the Debtors and the Prepetition Lenders may agree (in their sole discretion) in writing to the payment of such expenditures, and, if so agreed, such expenditures shall not be credited against the permitted variance.

---

[4] The Budget is included herein solely for the purposes of this Final Order, and the rights and remedies of all parties are otherwise not waived and fully preserved.

4.      The Debtors and the Senior Facilities Agent and Junior Lenders may, by agreement, amend, extend, supplement or modify the Budget, without further notice to creditors or order of this Court, provided that a Stipulation signed by counsel to the Debtors and counsel to the Senior Facilities Agent and Junior Lenders is filed with the Court together with a copy of the modified Budget.  Nothing in the Budget shall be deemed to modify the Specified Period.

### Adequate Protection to the Prepetition Lenders

5.      The Prepetition Lenders are entitled, pursuant to sections 105, 361, 362, and 363 of the Bankruptcy Code, to adequate protection of their interests in the Cash Collateral on account of the Debtors' use of the Cash Collateral, and any other diminution in value of their respective interests in the Prepetition Collateral arising out of the automatic stay or the Debtors' use, sale, lease, depreciation, depletion, or disposition of the Cash Collateral or the Prepetition Collateral, as the case may be (each such diminution, a "Diminution in Value").

6.      As adequate protection to the Prepetition Lenders for the aggregate Diminution in Value, the Prepetition Lenders shall be and hereby are granted (effective upon the Petition Date and without the necessity of the execution or filing by the Debtors or Prepetition Lenders of mortgages, security agreements, pledge agreements, financing statement, or otherwise, and subject to the relative priorities set forth herein and in the Coordination Agreement[5]) the following:

> Adequate Protection Liens.  To the extent of any Diminution of Value of their respective interests in the Prepetition Collateral, the Prepetition Lenders shall have valid and perfected additional and replacement security interests in, and liens upon (the "Adequate Protection Liens"), all of the Debtors' right, title and interest in, to, and under all of the Debtors' now owned and after-acquired assets and property, whether real or personal, tangible or intangible, including all cash and cash equivalents of the Debtors (whether maintained with the Senior Facilities Agent or other financial institutions), any

---

[5] As used herein, "Coordination Agreement" refers to that certain Coordination Agreement among the Debtors, the Senior Facilities Agent and the Junior Lenders dated as of March 27, 2008 (as amended, supplemented or otherwise modified).

investment of such cash and cash collateral, all inventory, accounts receivable, and any and all causes of action (excluding avoidance or other actions arising under chapter 5 of the Bankruptcy Code), and the proceeds thereof (whether recovered by judgment, settlement or otherwise, but not including in respect of the Greece Litigation against the Senior Facilities Lenders, nor any other causes of action brought against the Prepetition Lenders), any right to payment whether arising before or after the Petition Date, and the proceeds, products, rents and profits of all of the foregoing, but only to the extent that the Prepetition Lenders had valid, perfected prepetition liens and security interests in such collateral as of the Petition Date (collectively, the "Adequate Protection Collateral"); and

Adequate Protection Superpriority Claims.  To the extent of any Diminution of Value of their respective interests in the Prepetition Collateral, the Prepetition Lenders are each hereby granted, in addition to claims under section 503(b) of the Bankruptcy Code, and subject to the relative priorities between the Prepetition Lenders as set forth below, and subject to the Carve-Out (defined below) an allowed superpriority administrative expense claim with priority over any or all administrative expenses of any kind or nature, including those specified in sections 503(b) or 507(b) of the Bankruptcy Code, in each of the Cases (collectively, the "Adequate Protection Superpriority Claims").

7.      Except as provided in paragraph 12 of this Order, the Adequate Protection Liens granted to the Senior Facilities Agent and the Senior Facilities Lenders shall at all times be senior to all other security interests in, liens on, or claims against any of the Adequate Protection Collateral (except existing maritime liens, if any, of Gulf Marine and Gulf Hellas, but only if and to the extent valid, perfected, enforceable, unavoidable and senior and prior to the Senior Facilities Liens as of the Petition Date) including the Adequate Protection Liens and Adequate Protection Superpriority Claims granted to the Junior Lenders under this or any other order of the Court, and the prepetition liens of the Junior Lenders under the Junior Facility.  The Adequate Protection Liens granted to the Junior Lenders shall be junior and subject to: (A) the Adequate Protection Liens and the Adequate Protection Superpriority Claim granted to the Senior Facilities Agent and the Senior Lenders under this or any other order of the Court entered in these cases; (B) the liens in favor of the Senior Agent and the Senior Lenders under the Senior Facility; (C) the obligations under the Senior Facility; (D) the Carve Out; and (E) existing maritime liens, if any, of Gulf Marine and Gulf Hellas but only if and to the extent valid, perfected, enforceable,

unavoidable, and senior and prior to the Junior Lenders' liens as of the Petition Date. The Adequate Protection Liens granted to the Junior Lenders shall otherwise be senior to all other security interests in, liens on, or claims against any of the Adequate Protection Collateral, and shall at all times be subject to the Coordination Agreement.

8.      The Adequate Protection Superpriority Claim granted to the Junior Lenders shall be junior to (x) any Adequate Protection Superpriority Claim granted to the Senior Facilities Agent and Senior Facilities Lenders hereunder or under any other order of this Court and (y) the claims of the Senior Facilities Agent and Senior Facilities Lenders in respect of the Senior Facilities Obligations, and shall at all times be subject to the Coordination Agreement. Except for the respective priorities set forth herein (including paragraph 12 of this Order), the Adequate Protection Superpriority Claims shall have priority over all administrative expense claims, and all general unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever.

9.      Nothing herein shall be construed as a finding or conclusion that the Prepetition Lenders are or are not in fact adequately protected by the terms of this Final Order, or limit the rights of the Senior Facilities Agent or any of the Prepetition Lenders to seek at any time new or different adequate protection, or to terminate use of Cash Collateral under this Order, on a prospective basis (but without prejudice to the rights of the Debtors to seek to modify prospectively the adequate protection set forth herein or to object to such new or different adequate protection on any basis).

10.     Notwithstanding anything in the foregoing paragraphs, and for avoidance of doubt, the Debtors currently dispute all liens and claims of the Senior Facilities Lenders,

regardless of their nature or priority (including, but not limited to, the Adequate Protection Liens and Adequate Protection Superpriority Claims).

### Carve-Out

11.    As used herein, the term "Carve-Out" shall mean (i) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the Clerk of the Bankruptcy Court (the "Statutory Fees"), (ii) the disbursements set forth in the "Cash Outflows" section of the Budget[6] other than in respect of the Budget line item for "Professional Fees," to the extent accrued during the Specified Period and remaining unpaid upon termination thereof, (iii) the allowed (pursuant to Bankruptcy Court order) fees and expenses of the professionals (the "Estate Professionals") engaged (pursuant to Bankruptcy Court order) by the Debtors (including, without limitation, Bracewell & Giuliani LLP and Jefferies & Co., Inc.) or any Committee, if appointed, to the extent accrued during the Specified Period and remaining unpaid upon termination thereof, and regardless of whether already approved or pending approval by the Bankruptcy Court, but subject to the limitations for payment of "Professional Fees" set forth for such line item in the Budget (plus any permitted variance), and (iv) the allowed (pursuant to Bankruptcy Court order) fees and expenses of Estate Professionals which accrue after the Specified Period, in an aggregate amount not to exceed $1,500,000.00 (the "Additional Professional Fees and Expenses"). For the sake of clarity, (i) the Debtors shall be permitted to pay all allowed fees and expenses of the Estate Professionals incurred during the Specified Period as the same may be due or payable in accordance with any Court order governing interim compensation procedures, but in any event not to exceed the amount set forth in the "Professional Fees" line item in the Budget (plus any permitted variance), and (ii) such payments shall not be applied to reduce the amount

---

[6] No party to whom payments are owed in accordance with the Budget will be prejudiced solely because such party is also a maritime lien claimant, and all rights in that regard are reserved.

available under the Additional Professional Fees and Expenses cap of $1,500,000.00. Nothing in this Order shall be construed to affect the right of any party to object to the retention of any Estate Professional, the fee application of any Estate Professional, or any motion to establish compensation procedures in these Cases.

12.     Notwithstanding anything else in this Order, all liens and claims of the Senior Facilities Lenders and the Junior Lenders, irrespective of their nature or priority, shall be subject to the Carve-Out; provided however, that any allowed Senior Facilities Liens and the Adequate Protection Liens of the Senior Facilities Lenders, shall be senior and prior to, and shall not be subject to prior payment of, the Additional Professional Fees and Expenses, and no Senior Facilities Collateral or Adequate Protection Collateral shall be used to pay the Additional Professional Fees and Expenses until the Senior Facilities Obligations are either disallowed or indefeasibly paid in full and in cash; provided further however, that nothing herein shall preclude the Debtors from seeking, and the Court from granting, additional carve out amounts and the continued payment of professional fees and expenses as part of any future cash collateral orders entered in these cases, and all parties (including the Senior Facilities Agent and the Prepetition Lenders) reserve their rights to object to any such requests and any future cash collateral orders.

**Events of Default**

13.     The occurrence of any of the following events, unless waived in writing by the Senior Facilities Agent on behalf of the Senior Facilities and the Junior Lenders, shall constitute an "Event of Default":

(a)     the failure by any Debtor to comply with, or perform, any of the terms, provisions, conditions, covenants, or obligations under this Final Order including (without

limitation) the failure by any Debtor to comply with the Budget (within any permitted variances and subject to any exceptions set forth in this Final Order);

(b)     the Court shall grant any application or motion of the Debtors seeking to incur indebtedness from any party other than the Prepetition Lenders secured by a lien on, or otherwise having recourse to, the Prepetition Collateral or the Adequate Protection Collateral, which lien is senior to or pari passu with the Prepetition Liens or the Adequate Protection Liens of the Prepetition Lenders, or having claim priority senior to or pari passu with the Adequate Protection Superpriority Claim of the Prepetition Lenders, or the Court shall grant any application by any party seeking payment of any claim on a superpriority administrative claim basis;

(c)     the entry of an order by this Court or any other court having jurisdiction to do so granting relief from or modifying the automatic stay of Section 362 of the Bankruptcy Code to allow a holder or holders of any security interest in the Prepetition Collateral to foreclose or otherwise realize upon any such security interests;

(d)     any Ship is arrested, confiscated, seized, taken in execution, impounded, forfeited, detained in exercise or purported exercise of any possessory lien or other claim, or otherwise taken from the possession of the applicable Debtor, and such Ship is not returned to the possession of, or retrieved or repossessed by, the applicable Debtor for use and operation within 15 days;

(e)     dismissal of any of the Cases or conversion of any of the Cases to a case under Chapter 7 or the appointment in any case of a Chapter 11 trustee or examiner with enlarged powers;

(f)      the entry of an order by this Court or any other court having jurisdiction to do so (i) authorizing the sale of all or substantially all of the Debtors' assets, or (ii) authorizing any other sale or disposition of any of the Prepetition Collateral, except sales in the ordinary course of business or sales to dispose of immaterial or obsolete assets;

(g)      any Debtor shall make any payment (including "adequate protection" payments) on or in respect of any prepetition indebtedness other than pursuant to order of the Court;

(h)      the registration of any Ship under the laws and flag of the Flag State (as defined in the Senior Facilities Agreement) is cancelled or terminated without the prior written consent of the Senior Facilities Agent and the Junior Lenders and not restored within 15 days;

(i)      any Debtor or any other person fails or omits to comply with any requirements of the protection and indemnity association or other insurer with which a Ship is entered for insurance or insured against protection and indemnity risks (including oil pollution risks) to the effect that any cover (including, without limitation, any cover in respect of liability for Environmental Claims (as defined in the Senior Facilities Agreement) arising in jurisdictions where such Ship operates or trades) is cancelled and not renewed or replaced within five business days; or

(j)      this Court shall abstain from hearing any Case.

14.      The Senior Facilities Agent and the Junior Lenders shall have the right to terminate, suspend or restrict the Debtors' use of Cash Collateral under the terms of this Final Order after the occurrence and during the continuance of an Event of Default, provided that the Senior Facilities Agent and the Junior Lenders (as the case may be) shall have first given five business days' prior notice thereof (the "Notice Period"), including by facsimile or email (or

other electronic means) to counsel to the Debtors, the other Prepetition Lenders, the Committee (if one has been appointed) and to the U.S. Trustee. During the Notice Period, and if the Debtors timely seek an emergency hearing, until the conclusion of such emergency hearing, the Debtors may use Cash Collateral only to pay, with prior notice to the Senior Facilities Agent and Junior Lenders, and subject to the Budget, critical expenses necessary to maintain and preserve the Ships and the other Prepetition Collateral. Nothing in this Order shall preclude the Debtors from seeking nonconsensual use of Cash Collateral, or the Senior Facilities Agent or any of the Prepetition Lenders from contesting such use, in each case on any basis.

### Other

15.    During the Specified Period, the Debtors shall provide to the Prepetition Lenders (i) on each Wednesday a comparison of the prior week's actual revenues and expenses to budgeted amounts for that week and (ii) such other documents and information as the parties may agree in good faith.

16.    The Debtors shall provide continued maintenance of, and insurance on, the Ships and all of their other assets and property in the amounts and for the risk, and by the entities, consistent with the Debtors' prepetition practices and otherwise in compliance with the applicable court orders regarding payment of insurance. The Debtors shall provide the Senior Facilities Agent and Junior Lenders with copies of all notices and any material communications provided to them by or received by them from any insurer, as well as such other information relative to insurance on the Ships as the Prepetition Lenders shall reasonably request.

17.    The Debtors shall maintain cash management (i.e., in respect of the Earnings and Earnings Accounts) in accordance with the Order Granting Debtors' Emergency Motion for Order (i) Authorizing Continued Use of Existing Business Forms and Records; (ii) Authorizing Maintenance of Existing Corporate Bank Accounts and Cash Management System; and (iii)

Waiving the Requirements of 11 U.S.C. § 345(b), and all parties rights in respect thereof are fully preserved.

18.     The Debtor shall maintain accurate and separate books and records regarding the cash receipts and disbursements of each of the Ships and each Debtor's estate.

19.     Nothing contained in this Final Order shall be deemed to terminate, modify or release any obligations of any non-debtor guarantor to any Prepetition Agent or any Prepetition Lender with respect to the Senior Facilities Obligations or the obligations under the Junior Credit Agreement.

20.     Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Lenders hereunder is insufficient to compensate for any Diminution in Value of their respective interests in the Prepetition Indebtedness documents during these cases.

21.     The failure of any Prepetition Lender to seek relief or otherwise exercise its rights and remedies under this Final Order, the Prepetition Indebtedness documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of any Prepetition Lender.

22.     The Debtors have acted in good faith (including, without limitation, for the purposes of section 363(m) of the Bankruptcy Code) in connection with this Final Order.

23.     The provisions of this Final Order shall be binding upon and shall inure to the benefit of the Prepetition Lenders and the Debtors and their respective successors and assigns (including, without limitation, any trustee or other fiduciary hereafter appointed for the Debtors or with respect to the Debtors' property).

24.     Pursuant to Bankruptcy Rule 6004(h), this Final Order shall be immediately effective and enforceable upon its entry.

25.     Entry of this Final Order shall be without prejudice to any and all rights, remedies, claims and causes of action which the Debtors, the Prepetition Lenders and any maritime lien claimants, if any, may have against each other (under the Senior Facilities Documents, the Junior Credit Agreement or otherwise), and all such rights, remedies, claims and causes of action are specifically preserved.

26.     This Court has and will retain jurisdiction to enforce this Final Order according to its terms.

Dated: _____

UNITED STATES BANKRUPTCY JUDGE

J3826667

**EXHIBIT A**
(Budget)

Omega Navigation Enterprises, Inc. and Subsidiaries
Weekly Cash Flow Budget

($ in USD)

| Week Commencing On | Jul-11 | | Aug-11 | | | | | Sep-11 | | | | Oct-11 | | 13-Week |
| | 7/18/11 | 7/25/11 | 8/1/11 | 8/8/11 | 8/15/11 | 8/22/11 | 8/29/11 | 9/5/11 | 9/12/11 | 9/19/11 | 9/26/11 | 10/3/11 | 10/10/11 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Beginning of Period Cash Balance** | $3,347,575 | $2,258,714 | $1,704,817 | $1,737,972 | $3,202,101 | $2,950,944 | $1,564,084 | $714,842 | $479,844 | $1,881,309 | $1,504,710 | $621,482 | $223,927 | $3,347,575 |
| **Cash Inflows** | | | | | | | | | | | | | | |
| Voyage Revenue | $35,000 | - | 434,000 | 2,547,500 | - | - | - | - | 2,550,000 | - | - | 465,000 | 3,100,000 | 9,131,500 |
| Management fees | - | 296,136 | - | 101,318 | - | - | 31,606 | - | - | - | 31,606 | - | - | 460,666 |
| Total Cash Inflows | $35,000 | 296,136 | 434,000 | 2,648,818 | - | - | 31,606 | - | 2,550,000 | - | 31,606 | 465,000 | 3,100,000 | 9,592,166 |
| **Cash Outflows** | | | | | | | | | | | | | | |
| Voyage Expense | - | - | (5,425) | (598,575) | - | - | - | - | (150,000) | (50,000) | (100,000) | (360,000) | (50,000) | (1,314,000) |
| Vessel Operating Expenses | (592,384) | (510,033) | (348,420) | (327,114) | (125,157) | (633,860) | (476,848) | (174,998) | (274,535) | (101,599) | (534,834) | (442,550) | (210,679) | (4,753,016) |
| Management fees | - | - | (19,000) | - | - | - | - | - | - | - | - | - | - | (19,000) |
| General and Administrative | (131,477) | (250,000) | (28,000) | (41,000) | (11,000) | (39,000) | (404,000) | (60,000) | (10,000) | (10,000) | (280,000) | (60,000) | (10,000) | (1,334,477) |
| Maintenance CapEx | - | - | - | - | - | (614,000) | - | - | (514,000) | (100,000) | - | - | (514,000) | (1,742,000) |
| Professional Fees | - | (90,000) | - | (218,000) | (115,000) | (100,000) | - | - | (100,000) | (115,000) | - | - | (100,000) | (838,000) |
| Payments to Critical Vendors | (400,000) | - | - | - | - | - | - | - | (100,000) | - | - | - | (100,000) | (600,000) |
| Total Cash Outflows | $(1,123,861) | (850,033) | (400,845) | (1,184,689) | (251,157) | (1,386,860) | (880,848) | (234,998) | (1,148,535) | (376,599) | (914,834) | (862,550) | (984,679) | (10,600,493) |
| Net Cash Flow From Operations | $(688,861) | (463,897) | 33,155 | 1,682,129 | (136,157) | (672,860) | (849,242) | (234,998) | 2,115,465 | (161,599) | (883,228) | (397,550) | 2,829,321 | 2,171,673 |
| Net Cash Flow | $(1,088,861) | (553,897) | 33,155 | 1,464,129 | (251,157) | (1,386,860) | (849,242) | (234,998) | 1,401,465 | (376,599) | (883,228) | (397,550) | 2,115,321 | (1,008,327) |
| **End of Period Cash Balance** | $2,258,714 | 1,704,817 | 1,737,972 | 3,202,101 | 2,950,944 | 1,564,084 | 714,842 | 479,844 | 1,881,309 | 1,504,710 | 621,482 | 223,927 | 2,339,248 | 2,339,248 |

Source: Omega Management

# EXHIBIT B[7]

A   *Prepetition Secured Indebtedness.*

    (i)    *Senior Facilities.*

        (a)    Senior Facilities Agreement.  Omega Navigation Enterprises, Inc., ("Omega"), as borrower (in such capacity, the "Borrower"), certain banks as lenders (the "Senior Facilities Lenders"), and HSH Nordbank AG ("HSH Nordbank"), as agent (in such capacity, the "Senior Facilities Agent"), swap bank (in such capacity, the "Senior Swap Bank"), and arranger (together with the Senior Facilities Lenders, the Senior Facilities Agent and the Senior Swap Bank, the "Senior Finance Parties"), are parties to that certain Facilities Agreement dated as of April 7, 2006 (as amended, supplemented or otherwise modified, the "Senior Facilities Agreement"), pursuant to which, among other things, (x) the Senior Facilities Lenders made Advances (as defined in the Senior Facilities Agreement, and collectively, the "Senior Loan") to or for the benefit of the Borrower and the other Debtors and (y) the Borrower agreed to cause all amounts payable to it or any of the other Debtors in respect of revenues and earnings generated by operations of the Ships ("Earnings") to be paid to the Earnings Accounts (as defined below).[8]

        (b)    Senior Facilities Guarantees.  Each of the Debtors other than Omega (each in such capacity, a "Guarantor", and collectively, the "Guarantors"), on the one hand, and the Senior Facilities Agent, on the other hand, are parties to the Guarantee (collectively, the "Senior Facilities Guarantees") set forth opposite the name of such Guarantor on Schedule 1 hereto, pursuant to which each of the Guarantors guaranteed payment of all amounts owed or incurred by, and the discharge of all of the liabilities and obligations of, the Borrower under the Senior Facilities Agreement and the other Senior Facilities Documents (as defined below) to which the Borrower is a party (together with all other liabilities and obligations defined as "Guaranteed Liabilities" in each Guarantee, the "Guaranteed Liabilities").

        (c)    Senior Facilities Security Documents.  Each Debtor is a party to the documents, agreements and instruments set forth in this subparagraph (d) below or opposite its name on Schedule 1 hereto (the "Senior Facilities Security Documents", and together with the Senior Facilities Agreement, the Senior Facilities Guarantees, and all other documents, agreements and instruments executed or delivered from time to time in connection therewith or related thereto, as amended, supplemented or otherwise modified, the "Senior Facilities

---

[7] Subject to note 3 above.

[8] The Senior Swap Bank and Omega were counterparties to that certain ISDA Master Swap Agreement, dated as of April 7, 2006 (such IDSA Master Swap Agreement, as amended, supplemented or otherwise modified, together with all related confirmations, supplements and schedules, the "Master Swap Agreement"), pursuant to which the parties entered into certain interest rate hedging arrangements in respect of the Loans. The Master Swap Agreement expired on or about April 12, 2011.

Documents"), pursuant to which, among other things, as described more fully below, such Debtor pledged, mortgaged or assigned (absolutely or as collateral), to the Senior Facilities Agent, and granted in favor of the Senior Facilities Agent liens on and security interests in (the "<u>Senior Facilities Liens</u>") all or substantially all of its assets and property (the "<u>Senior Facilities Collateral</u>") as security for repayment of, as the case may be, the Senior Loan, the Guaranteed Liabilities of such Debtor, and all interest, fees, Expenses (as defined in each of the General Assignments (as defined below)) and all other liabilities and obligations of such Debtor under the Senior Facilities Documents to which it is a party (collectively, and as described more fully in subparagraph (e) below, the "<u>Senior Facilities Obligations</u>").

(1)   <u>Omega Security</u>.   Omega is party to those certain Pledge Agreements set forth opposite its name on Schedule 1 hereto (as amended, supplemented or otherwise modified, the "<u>Omega Pledge Agreements</u>"), pursuant to which Omega pledged to the Senior Finance Parties as collateral for repayment of the outstanding Senior Facilities Obligations all present and future credit balances from time to time standing to the credit of certain of Omega's accounts maintained at HSH Nordbank AG, identified in the Omega Pledge Agreements and set forth on <u>Schedule 1</u> hereto.[9]

(2)   <u>Ship Mortgages</u>.   Each of the Guarantors owns the vessel and is party to the ship mortgage (as amended, supplemented or otherwise modified, the "<u>Mortgages</u>") set forth opposite its name on <u>Schedule 1</u> hereto, pursuant to which, among other things, it mortgaged its Ship (as defined in the applicable Mortgage and set forth on <u>Schedule 1</u>) to the Senior Facilities Agent as security for repayment of the Senior Facilities Obligations of such Guarantor.

(3)   <u>General Assignments of Earnings, etc.</u>   Each of the Guarantors is party to the General Assignment or Deed of Assignment set forth opposite its name on <u>Schedule 1</u> hereto (as amended, supplemented or otherwise modified, the "<u>General Assignments</u>"), pursuant to which such Guarantor (x) assigned to the Senior Facilities Agent, absolutely and as security for payment of the Senior Facilities Obligations of such Guarantor, all of its right, title and interest to all amounts payable to such Guarantor arising out of use or operation of its Ship, and all other Earnings, Insurances and Requisition Compensation (each as defined, and to the extent provided, in the applicable General Assignment), and (y) agreed to cause all persons

---

[9] Omega had advanced the aggregate amount of the Senior Loan to the other Debtors pursuant to the separate loan agreements between Omega, as lender, and each other Debtor, as borrower (collectively, the "<u>Intra-Group Loan Agreements</u>"), to enable such other Debtor to finance its Ship. Omega and the Senior Facilities Agent are also parties to that certain Assignment of Intra-Group Loan Agreements, dated April 12, 2006 (as amended, supplemented or otherwise modified), pursuant to which Omega assigned to the Senior Facilities Agent, absolutely and as collateral securing repayment of its Senior Facilities Obligations, all of its rights, title and interest in and to the Intra-Group Loan Agreements and all its benefits and interests, present and future, under such agreements.

from whom Earnings are payable to pay such amounts directly to the applicable Earnings Accounts (as defined below) or as the Senior Facilities Agent otherwise directs.

(4)     Pledge of Earning Accounts.  Each of the Guarantors is party to the Pledge Agreement set forth opposite its name on Schedule 1 hereto (as amended, supplemented or otherwise modified, the "Guarantor Pledge Agreements"), pursuant to which such Guarantor pledged to the Senior Finance Parties all present and future credit balances from time to time standing to the credit of such Guarantor's bank account maintained with HSH Nordbank AG identified in the Guarantor Pledge Agreement and set forth on Schedule 1 hereto (the "Earnings Accounts"), including interest, as collateral for all existing and future receivables and claims which the Senior Facilities Lenders have or will have against or in respect of Omega based on the Senior Facilities Agreement.

(d)     Senior Facilities Obligations.  As of the Petition Date, the "Senior Facilities Obligations" are comprised of, the outstanding Senior Loans in the aggregate principal amount of $242,720,000, plus amounts advanced by any Senior Finance Party in connection with the preservation, maintenance, operation or liquidation (including in these Cases and any Successor Cases (as defined below)) of any Senior Facilities Collateral, plus all interest thereon and all fees, expenses (including any attorneys', accountants', consultants', appraisers' and financial advisors' fees that are chargeable or reimbursable under the Senior Facilities Documents), charges and other obligations incurred in connection therewith as provided in the Senior Facilities Documents.

(e)     Cash Collateral.  The Senior Faculties Agent asserts that all cash or deposits in, and all balances credited to, the Debtors' bank accounts constitutes Earnings of the applicable Debtor, and all Earnings and all cash, negotiable instruments, documents of title, securities or other cash equivalents in which the Debtors have an interest, whenever acquired and wherever located, constitutes original collateral or proceeds of other Senior Facilities Collateral, and in all cases are the cash collateral within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral") of the Senior Facilities Agent and the Senior Finance Parties.

**Senior Facilities Guarantees and Security Documents**
(also as prepared by the Senior Lenders and not stipulated to by the Debtors)

| Senior Finance Party | Mortgaged Vessel | Documents |
|---|---|---|
| Omega Navigation Enterprises, Inc. | N/A | Pledge Agreement, dated 5/29/06, between Omega Navigation Enterprises Inc., as Pledgor, and HSH Nordbank AG, as Pledgee regarding account no. 200605261 0032 maintained at HSH Nordbank AG |
| | | Pledge Agreement, dated 4/12/06, between Omega Navigation Enterprises, Inc., as Pledgor, HSH Nordbank AG, as Agent, and the Banks (as defined therein), as Pledgees regarding account nos. 1100313082 and 1100313339 maintained at HSH Nordbank AG |
| Galveston Navigation Inc. | Omega Lady Miriam | Guarantee, dated 8/1/06, between Galveston Navigation Inc., as Guarantor, and HSH Nordbank AG, as Agent |
| | | First Preferred Marshall Islands Ship Mortgage on m.v. "Omega Lady Miriam", dated 8/1/06, by Galveston Navigation Inc., as Owner, in favor of HSH Nordbank AG, as Mortgagee |
| | | Marshall Islands General Assignment relating to m.v. "Omega Lady Miriam", dated 8/1/06, by Galveston Navigation Inc., as Owner, in favor of HSH Nordbank AG, as Mortgagee |
| | | Notice of Assignment of Earnings for M.V. "Omega Lady Miriam", dated 2/3/11, by Galveston Navigation Inc. to ST Shipping Transport PTE Limited |
| | | Pledge Agreement, dated 7/28/2006, between Galveston Navigation Inc., as Pledgor, HSH Nordbank AG, as Agent, and the Banks (as defined therein), as Pledgees regarding account no. 1100313386 maintained at HSH Nordbank AG |
| Beaumont Navigation Inc. | Omega Lady Sarah | Guarantee, dated 6/30/06, between Beaumont Navigation Inc., as Guarantor, and HSH Nordbank AG, as Agent |
| | | First Preferred Marshall Islands Ship Mortgage on m.v. "Omega Lady Sarah", dated 6/30/06, by Beaumont Navigation Inc., as Owner, in favour of HSH Nordbank AG, as Mortgagee |
| | | Marshall Islands General Assignment relating to m.v. "Omega Lady Sarah", dated 6/30/06, between Beaumont Navigation Inc., as Owner, and HSH |

J3826667

| Senior Finance Party | Mortgaged Vessel | Documents |
|---|---|---|
| | | Nordbank AG, as Mortgagee |
| | | Notice of Assignment of Earnings for M.V. "Omega Lady Sarah", dated 2/3/11, by Beaumont Navigation Inc. to ST Shipping Transport PTE Limited |
| | | Pledge Agreement, dated 6/30/06, between Beaumont Navigation Inc., as Pledgor, HSH Nordbank AG, as Agent, and the Banks (as defined therein), as Pledgees regarding account no. 1100313364 maintained at HSH Nordbank AG |
| Carrolton Navigation Inc. | Omega Prince | Guarantee, dated 6/27/06, between Carrolton Navigation Inc., as Guarantor, and HSH Nordbank AG, as Agent |
| | | First Preferred Marshall Islands Ship Mortgage on m.v. "Omega Prince", dated 6/27/06, by Carrolton Navigation Inc., as Owner, in favour of HSH Nordbank AG, as Mortgagee |
| | | Marshall Islands General Assignment relating to m.v. "Omega Prince", dated 6/27/06, between Carrolton Navigation Inc., as Owner, and HSH Nordbank AG, as Mortgagee |
| | | Notice of Assignments of Earnings for M.V. "Omega Prince", dated 2/3/11, by Carrolton Navigation Inc. to ST Shipping Transport PTE Limited |
| | | Pledge Agreement, dated 6/27/06, between Carrolton Navigation Inc., as Pledgor, HSH Nordbank AG, as Agent, and the Banks (as defined therein), as Pledgees regarding account no. 1100313285 maintained at HSH Nordbank AG |
| Decatur Navigation Inc. | Omega Princess | Guarantee, dated 7/3/06, between Decatur Navigation Inc., as Guarantor, and HSH Nordbank AG, as Agent |
| | | First Preferred Marshall Islands Ship Mortgage on m.v. "Omega Princess", dated 7/3/06, by Decatur Navigation Inc., as Owner, in favour of HSH Nordbank AG, as Mortgagee |
| | | Marshall Islands General Assignment relating to m.v. "Omega Princess", dated 7/3/06, between Decatur Navigation Inc., as Owner, and HSH Nordbank AG, as Mortgagee |
| | | Notice of Assignment of Earnings for M.V. "Omega |

J3826667

| Senior Finance Party | Mortgaged Vessel | Documents |
|---|---|---|
| | | Princess", dated 2/3/11, by Decatur Navigation Inc. to ST Shipping Transport PTE Limited |
| | | Pledge Agreement, dated 7/3/06, between Decatur Navigation Inc., as Pledgor, HSH Nordbank AG, as Agent, and the Banks (as defined therein), as Pledgees regarding account no. 1100313263 maintained at HSH Nordbank AG |
| Elgin Navigation Inc. | Omega Queen | Guarantee, dated 5/29/06, between Elgin Navigation Inc., as Guarantor, and HSH Nordbank AG, as Agent |
| | | First Preferred Marshall Islands Ship Mortgage on m.v. "Omega Queen", dated 5/29/06, by Elgin Navigation Inc., as Owner, in favour of HSH Nordbank AG, as Mortgagee |
| | | Marshall Islands General Assignment relating to m.v. "Omega Queen", dated 5/29/06, between Elgin Navigation Inc., as Owner, and HSH Nordbank AG, as Mortgagee |
| | | Notice of Assignment of Earnings for M.V. "Omega Queen", dated 2/3/11, by Elgin Navigation Inc. to ST Shipping Transport PTE Limited |
| | | Pledge Agreement, dated 5/29/06, between Elgin Navigation Inc., as Pledgor, HSH Nordbank AG, as Agent, and the Banks (as defined therein), as Pledgees regarding account no. 11 00 31 32 44 maintained at HSH Nordbank AG |
| Fulton Navigation Inc. | Omega King | Guarantee, 6/14/06, between Fulton Navigation Inc., as Guarantor, and HSH Nordbank AG, as Agent |
| | | First Preferred Marshall Islands Ship Mortgage on m.v. "Omega King", dated 6/14/06, by Fulton Navigation Inc., as Owner, in favour of HSH Nordbank AG, as Mortgagee |
| | | Amendment No. 1 to First Preferred Mortgage on m.v. "Omega King", dated 3/28/08, between Fulton Navigation Inc., as Owner, and HSH Nordbank AG, as Mortgagee |
| | | Marshall Islands General Assignment relating to m.v. "Omega King", dated 6/14/06, between Fulton Navigation Inc., as Owner, and HSH Nordbank AG, as Mortgagee |

| Senior Finance Party | Mortgaged Vessel | Documents |
|---|---|---|
|  |  | Notice of Assignment of Earnings for M.V. "Omega King", dated 2/3/11, by Fulton Navigation Inc. to Cape Tankers Inc. |
|  |  | Pledge Agreement, dated 6/14/06, between Fulton Navigation Inc., as Pledgor, HSH Nordbank AG, as Agent, and the Banks (as defined therein), as Pledgees regarding account no. 1100313345 maintained at HSH Nordbank AG |
| Orange Navigation Inc. | Omega Emmanuel | Guarantee and Indemnity, dated March 21, 2007, between Orange Navigation Inc., as Guarantor, and HSH Nordbank AG, as Agent |
|  |  | First Preferred Liberian Mortgage m.v. "Omega Emmanuel" (ex Hull No. S-1205), dated 3/27/07, by Orange Navigation Inc., as Owner, in favour of HSH Nordbank AG, as Mortgagee |
|  |  | Deed of Assignment m.v. "Omega Emmanuel", dated 3/27/07, between Orange Navigation Inc., as Owner, and HSH Nordbank AG, as Mortgagee |
|  |  | Notice of Assignment of Earnings for M.V. "Omega Emmanuel", dated 2/3/11, by Orange Navigation Inc. to ST Shipping Transport PTE |
|  |  | Pledge Agreement, dated 3/27/07, between Orange Navigation Inc., as Pledgor, HSH Nordbank AG, as Agent, and the Banks (as defined therein), as Pledgees regarding account no. 1100333822 maintained at HSH Nordbank AG |
| Baytown Navigation Inc. | Omega Theodore | Guarantee and Indemnity, dated March 21, 2007, between Baytown Navigation Inc., as Guarantor, and HSH Nordbank AG, as Agent |
|  |  | First Preferred Liberian Mortgage m.v. "Omega Theodore" (ex Hull No. S-1206), dated 4/26/07, by Baytown Navigation Inc., as Owner, in favour of HSH Nordbank AG, as Mortgagee |
|  |  | Deed of Assignment m.v. "Omega Theodore", dated 4/26/07, between Baytown Navigation Inc., as Owner, and HSH Nordbank AG, as Mortgagee |
|  |  | Notice of Assignment of Earnings for M.V. "Omega Theodore", dated 2/3/11, by Baytown Navigation Inc. to ST Shipping Transport PTE Limited |

| Senior Finance Party | Mortgaged Vessel | Documents |
|---|---|---|
| | | Pledge Agreement, dated 4/26/07, between Baytown Navigation Inc., as Pledgor, HSH Nordbank AG, as Agent, and the Banks (as defined therein), as Pledgees regarding account no. 1100333844 maintained at HSH Nordbank AG |